RICHMAN LAW GROUP
Kim E. Richman (*Pro Hac Vice*)
KRichman@RichmanLawGroup.com
81 Prospect Street
Brooklyn, NY 11201
Telephone: (212) 687-8291

ELSNER LAW & POLICY, LLC
Gretchen Elsner (*Pro Hac Vice*)
Gretchen@ElsnerLaw.org
150 Washington Avenue, Suite 201-220
Santa Fe, NM 87501
Telephone: (505) 303-0980

CENTER FOR FOOD SAFETY
Adam Keats (CSB. No. 191157)
AKeats@CenterForFoodSafety.org
303 Sacramento Street, 2nd Floor
San Francisco, CA 94111
Telephone: (415) 826-2770

*Additional Plaintiffs' counsel listed on signature page*

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ORGANIC CONSUMERS ASSOCIATION, a Minnesota non-profit corporation, on behalf of the general public; FRIENDS OF THE EARTH, a Washington, D.C. non-profit corporation, on behalf of the general public; CENTER FOR FOOD SAFETY, a California non-profit corporation, on behalf of the general public,<br><br>Plaintiffs,<br><br>v.<br><br>SANDERSON FARMS, INC., a Mississippi corporation,<br><br>Defendant. | CASE NO. 3:17-CV-03592-RS<br><br>**SECOND AMENDED COMPLAINT**<br><br>JURY TRIAL DEMANDED |

The Organic Consumers Association (the OCA), a national non-profit corporation based in Finland, Minnesota, Friends of the Earth (FoE), a Washington, D.C. based non-profit corporation, and Center for Food Safety (CFS), a national non-profit corporation based in Washington, D.C., (collectively, "Plaintiffs"), acting on behalf of the general public, by and through their counsel, bring this action against Sanderson Farms, Inc. ("Defendant" or "Sanderson"), a Mississippi corporation, and allege the following based upon personal knowledge as to their own actions and their counsel's investigations, and upon information and belief as to all other matters:

**NATURE OF THE CASE**

1.      Defendant Sanderson produces, markets, and advertises Chicken Products, as defined *infra*, ¶ 7.

2.      Sanderson markets and advertises the Chicken Products as "100% Natural."

3.      Sanderson's unnatural industrial production practices are in conflict with its advertising claims that its Chicken Products are "100% Natural."

4.      Sanderson unnatural industrial production practices including the use of antibiotics deemed "critically important for human medicine" by the World Health Organization.

5.      Sanderson's "100% Natural" marketing and advertising scheme falsely and misleadingly suggests that (1) antibiotics or other unnatural substances are not injected into the eggs or chickens, fed to the chickens, or administered in any way—and certainly not routinely administered—to Sanderson's chickens;  (2) the chickens who wind up in the Chicken Products are raised in "100% Natural" conditions; and (3) consumers are ingesting nothing but chicken, and certainly no synthetic drugs or other unnatural substances.

6.      Plaintiffs, which are three non-profit organizations dedicated to safeguarding the rights of consumers, bring this action pursuant to California law in order to end Sanderson's deceptive practices.

**FACT ALLEGATIONS**

7.      The Sanderson Chicken Products at issue (collectively, the "Chicken Products"), all

1  of which are marketed as "100% Natural" include the following[1]:

2  •  Clipped Chicken Tenderloins

3  •  Boneless Skinless Chicken Thigh Fillets

4  •  Boneless Skinless Breast Strips

5  •  Thinly Slices Boneless Skinless Breast Fillets

6  •  Boneless Skinless Breast Fillets

7  •  Best of Boneless

8  •  Boneless Skinless Breast Chunks

9  •  Family Pack Whole Legs

10  •  Whole Legs

11  •  Family Pack Wingettes

12  •  Wingettes

13  •  Drumsticks & Thighs Combo

14  •  Skinless Drumsticks

15  •  Chicken Hearts

16  •  Value Pack Chicken Gizzards

17  •  Skinless Split Breast

18  •  Family Pack Chicken Tenderloins

19  •  Chicken Tenderloins

20  •  Family Pack Boneless, Skinless Chicken Breast Fillets with Rib Meat

21  •  Skinless Thighs

22  •  Family Pack Thighs

23  •  Thighs

24  •  Value Pack Thighs

25  •  Value Pack Leg Quarters

26  •  Value Pack Wings

27

28  [1] Discovery may indicate that additional products should be included within the scope of this Complaint, and Plaintiffs reserve the right to add those products.

- Value Pack Drumsticks
- Value Pack Split Breasts
- Chicken Necks
- Wing Drumettes
- Family Pack Drumsticks
- Family Pack Thighs
- Family Pack Leg Quarters
- Whole Roasting Chicken
- Pick of the Chicken
- Family Pack Wings
- Family Pack Split Breasts
- Livers
- Chicken Gizzards
- Stripped Back Portions
- Wings
- Thighs
- Drumsticks
- Split Breasts
- Whole Cut-Up Chicken with Giblets and Neck
- Whole Frying Chicken (Whole Young Chicken).

8. The Chicken Products are available for purchase under the Sanderson Farms brand at retail locations such as Food 4 Less, Foods Co, and WinCo Foods,[2] with the Sanderson Farms logo.

9. In 2014, the National Chicken Council surveyed United States consumers and found that 89% of survey respondents ate chicken during a two-week period, and consumers ate chicken an average of 6.1 times during a two-week period. The leading reason to increase consumption is "health/nutrition." The survey concludes that "[t]he primary reasons for altering consumption patterns

---

[2] Sanderson Farms, "Find A Store," http://www.sandersonfarms.com/store-finder/ (last visited August 22, 2017).

are health/nutrition, taste and cost. These factors should be addressed in advertising."[3]

**I.   Sanderson's Process is Not Natural.**

10.    Upon information and belief, Sanderson's process for creating its Chicken Products includes the intensive confinement of chickens and unnatural industrial production practices, including the use of antibiotics, and/or other unnatural substances.

11.    Approximately 73% of all medically important antibiotics sold in the United States are for livestock use.[4]

12.    The World Health Organization's 2014 report, titled Antimicrobial Resistance: Global Report on Surveillance, stated, "[t]he classes of antibiotics used in food-producing animals and in human drug are mostly the same, thereby increasing the risk of emergence and spread of resistant bacteria, including those capable of causing infections in both animals and humans. Food-producing animals are reservoirs of pathogens with the potential to transfer resistance to humans." (citations omitted).[5]

13.    The Centers for Disease Control and Prevention (CDC), U.S. Department of Health and Human Services summarized the threat to public health posed by antibiotic use in agricultural operations, such Sanderson Farms:

> Antibiotics are widely used in food-producing animals, and according to data published by FDA, there are more kilograms of antibiotics sold in the United States for food-producing animals than for people [hyperlink omitted]. This use contributes to the emergence of antibiotic-resistant bacteria in food-producing animals. Resistant bacteria in food-producing animals are of particular concern because these animals serve as carriers. Resistant bacteria can contaminate the foods that come from those animals, and people who consume these foods can develop antibiotic-resistant infections. Antibiotics must be used judiciously in humans and animals because both uses contribute to not only the emergence, but

---

[3] National Chicken Council, "Chicken Usage Summary, July 2014," at 3-4,18, http://www.nationalchickencouncil.org/wp-content/uploads/2014/07/Consumer-Research-2014-Presentation-Final-0717141-1.pdf. The 2014 study is the most recent study available on the website.
[4] The Pew Charitable Trusts, "Record-High Antibiotic Sales for Meat and Poultry Production" (July 17, 2013), *available at* http://www.pewtrusts.org/en/multimedia/data-visualizations/2013/recordhigh-antibiotic-sales-for-meat-and-poultry-production.
[5] World Health Organization, "Antimicrobial Resistance: Global Report on Surveillance" (June 2014), at 59, *available a*t http://apps.who.int/iris/bitstream/10665/112642/1/9789241564748_eng.pdf?ua=1.

also the persistence and spread of antibiotic-resistant bacteria.[6]

14.     An estimated 23,000 deaths and more than 2 million illnesses have been caused by antibiotic-resistant bacteria, as estimated in 2013 by the CDC.[7]

15.     Children experience the ill-effects of antibiotic overuse in agriculture, most especially children younger than five years old who become infected with antibiotic resistant bacteria.[8]

16.     According to the President's Council of Advisors on Science and Technology and its Report to the President on Combatting Antibiotic Resistance, "[s]ubstantial evidence demonstrates that use of antibiotics in animal agriculture promotes the development of antibiotic-resistant microbes in animals and that retail meat can be a source of microbes, including antibiotic-resistant microbes."[9]

17.     A 2017 review of the research to date concludes, "taken together, the data support what the scientific community, national governments, and international organizations such as the World Health Organization, the Food and Agricultural Organization of the United Nations, and the World Organization for the Health of Animals (OIE) have long recognized: antimicrobial use on farms clearly contributes to the emergence of resistance and poses a human public health risk."[10]

## II.     The Chicken Products Are Marketed, Advertised, and Sold in California.

18.     Upon information and belief, Sanderson markets and advertises its Chicken Products in California, and seeks to reach the vast California consumer base through broadcast television, print

---

[6] CDC, "Antibiotic Resistance Threats in the United States, 2013" (Apr. 23, 2013), at 36-37, https://www.cdc.gov/drugresistance/pdf/ar-threats-2013-508.pdf. The report also contains a glossary of terms related to antibiotic resistance. *See also,* http://www fda gov/downloads/ForIndustry/UserFees/ AnimalDrugUserFeeActADUFA/UCM338170 pdf (hyperlink omitted above).
[7] *Id.* at 13.
[8] Jerome A. Paulson, Theoklis E. Zaoutis, , "Nontherapeutic Use of Antimicrobial Agents in Animal Agriculture: Implications for Pediatrics," Pediatrics 2015;136;e1670 (Nov. 16, 2015), at e1673, *available at* http://pediatrics.aappublications.org/content/pediatrics/136/6/e1670.full.pdf.
[9] Executive Office of the President of the United States, "Report to the President on Combatting Antibiotic Resistance," (September 2014), *available at* https://obamawhitehouse.archives.gov/sites/default/files/microsites/ostp/PCAST/pcast_carb_report_sept2014.pdf.
[10] Hoelzer et al., "Antimicrobial drug use in food-producing animals and associated human health risks: what, and how strong, is the evidence?," BMC Veterinary Research (2017) 13:211, at 35, *available at* https://link.springer.com/epdf/10.1186/s12917-017-1131-3?author_access_token=CbmecKjS4XscxgMn92-6rm_BpE1tBhCbnbw3BuzI2RMGFJmV0iy8Y06YFc2zc-R5jN1X3crDybEToB_CzXCpRozpkwGnxg9ydolzETVy02VGkppjTRq1V0MGiTqrqtB8g2U114wU4Fb9RacLAHWYIA%3D%3D.

advertising, radio advertising, and online marketing such as Facebook, YouTube, and its own website.

19.     The Chicken Products are available for purchase at retail locations throughout California, such as Food 4 Less, Foods Co, and WinCo Foods,[11] with the Sanderson Farms logo. The Chicken Products are available from Redding in the north to San Diego in the south.

20.     Sanderson processing plants from which Chicken Products are shipped to California are located in Georgia, Louisiana, Mississippi, North Carolina, and Texas. Governmental entities detected unnatural residues in every state in which Sanderson has processing plants. Therefore, upon information and belief, Sanderson chicken that tested positive for unnatural residues at the processing plants became Sanderson Chicken Products on grocery store shelves in California.

**III.     Sanderson's Marketing and Advertising Misleads Consumers About the Nature of the Chicken Products.**

21.     Sanderson misleadingly markets and advertises the Chicken Products as "100% Natural" because it knows consumers will buy more of, and pay more for, a natural product, and for a product that originates from animals raised humanely, animals raised with higher welfare standards, or animals raised without intensive use of chemicals.

22.     In a 2015 Consumer Reports survey, consumers reported that they believed the following about meat and poultry products dubbed "natural":

(a)  The animals were given no artificial growth hormones (64%);

(b)  No artificial ingredients or colors were added (65%);

(c)  The animals' feed contained no artificial ingredients or colors (61%);

(d)  The animals' feed contained no GMOs (59%);

(e)  No antibiotics or other drugs were ever used (57%); and

(f)  The animals went outdoors (50%).[12]

23.     The 2015 survey additionally found that 62% of consumers purchase "natural" products, and 87% of those purchasers are willing to pay more for products called "natural" that meet

---

[11] Sanderson Farms, *supra* note 2.
[12] Consumer Reports National Research Center, "Natural Food Labels Survey" (2015), at 4, *available at* http://www.consumerreports.org/content/dam/cro/magazine-articles/2016/March/Consumer_Reports_Natural_Food_Labels_Survey_2015.pdf.

their expectations as to what "natural" means.[13] A 2016 Consumer Reports survey found the number of consumers who purchase "natural" products to be as high as 73%.[14]

24.     Survey data suggests that consumers believe that animals used in "natural" food products were not raised under conditions of intensive confinement or inhumane treatment. For example, eighty-three percent of respondents to a 2007 food labeling poll by Consumer Reports said that the "natural" label on meat should mean "it came from an animal that was raised in a natural environment." In 2008, another poll from Consumer Reports found that seventy-six percent of respondents said that a "naturally raised" label meant the animals used for the product had been treated humanely.

25.     As set forth above, the Chicken Products are produced under conditions of intensive confinement of chickens and unnatural industrial production practices.

26.     Upon information and belief, Plaintiffs are informed that the Chicken Products may contain antibiotic residues and/or other chemicals.

27.     Despite this, Sanderson heavily markets and advertises the Chicken Products as "100% Natural" and intentionally omits the true facts. Sanderson's Chicken Products marketing campaign is titled "The Truth About Chicken." Sanderson refers to this campaign as unique and creative.[15] The campaign was available online during the applicable limitations period.[16]

28.     Sanderson's advertising campaign has created consumer confusion as to whether the Chicken Products are natural.

29.     Upon information and belief, Sanderson also has aired its marketing videos as broadcast television commercials in markets in which it sells its Chicken Products, including in California; has aired its marketing messages as radio commercials in markets in which it sells its

---

[13] *Id.* at 2.
[14] Consumer Reports National Research Center, "Natural Food Labels Survey" (2016), at 2, *available at* http://greenerchoices.org/wp-content/uploads/2016/08/2016_CRFoodLabelsSurvey.pdf.
[15] Sanderson Farms, *supra* note 5, at 7.
[16] Sanderson Farms, "The Truth About Chicken," available at http://www.sandersonfarms.com/truth-about-chicken/, last visited June 21, 2017. Since Plaintiffs filed suit, Sanderson has changed its website, though this URL still leads consumers to a "Truth About Chicken" campaign, which includes much of the same information, absent the videos that were previously included.

CASE 3:17-CV-03592-RS
SECOND AMENDED COMPLAINT FOR DECLARATORY & INJUNCTIVE RELIEF                    7

Chicken Products, including in California; and has issued its marketing messages as print advertisements in markets in which it sells its Chicken Products, including in California.

30.     Sanderson uses its marketing and advertising campaign to deceive and mislead consumers about what they are ingesting and what Sanderson's Chicken Products may contain after they leave the farm, about Sanderson's use of antibiotics and other chemicals in its production process, and about how Sanderson's chickens are raised and treated.

31.     A neutral third party, the Council of Better Business Bureaus, National Advertising Division (NAD), concluded on August 11, 2017, that key claims in Sanderson's advertising are misleading. "NAD also determined that given the lack of any consensus in the scientific community over the safety of consuming meat from animals raised using antibiotics [Sanderson] should discontinue from its advertising language that characterizes the 'raised without antibiotics' labels on competitive chicken producers' products as a 'marketing gimmick,' 'just a trick to get you to pay more money,' a claim that is 'full of hot air and doesn't say much,' 'a phrase [that marketers] invented to make chicken sound safer … and it doesn't mean much' and similar language."[17]

32.     Consumers, including consumers who are members of Plaintiffs' organizations, have been misled by Sanderson's representations. Consumers, including consumers who are members of Plaintiffs' organizations, relied on Sanderson's representations, and purchased Sanderson's Chicken Products in California. Plaintiffs also purchased Sanderson's Chicken Products in California.

**A.     Sanderson's Marketing and Advertising Misleads Consumers About Whether They Are Eating Only 100% Natural Chicken.**

33.     One of Sanderson's marketing campaigns featured "Bob" and "Dale," two men clad in Sanderson Farms baseball caps who speak directly to the viewer. In one video titled "Floppy Arms," Bob asserts that federal law requires chickens to be clear of antibiotics before they leave the farm[18]—giving the impression that Sanderson's Chicken Products do not contain antibiotics. As of

---

[17] Advertising Self-Regulatory Council, Press Release (Aug. 11, 2017), *available at* http://www.asrcreviews.org/nad-recommends-sanderson-farms-discontinue-claims-about-tricks-gimmicks-finds-company-can-support-certain-claims-referencing-federal-law/.

[18] Sanderson's "The Truth About Chicken" webpage (recently retitled as "Chicken Myths") also states, "By federal law, all chicken must be clear of antibiotics before they leave the farm."

August 22, 2017, "Floppy Arms" has been viewed approximately 779,132 times on YouTube, viewed more than 2.4 million times on a Facebook post dated October 13, 2016, and shared on Facebook 348 times. The commercial has an estimated 116,413,306 impressions on broadcast television.[19]

34.     In a second video, titled "Marketing Guru," Bob and Dale stand in front of an old-fashioned red barn with white trim. Bob asserts that the phrase "raised without antibiotics" was invented to make chicken sound safer but that it doesn't mean much because federal law requires that chickens be clear of antibiotics before they leave the farm—again giving the impression that Sanderson's Chicken Products do not contain antibiotics. As of August 22, 2017, "Marketing Guru" has been viewed approximately 1,057,016 times on YouTube, viewed more than 712,000 times on a Facebook post dated November 1, 2016, and shared on Facebook 226 times. The commercial has an estimated 89,745,934 impressions on broadcast television, at an estimated cost of $2,293,431.[20]

*Below is a screenshot of the video titled "Marketing Guru."*



35.     In a third video, titled "Supermarket," Dale is wearing a blindfold and pulling chicken packages off the grocery store shelves. Bob announces that they blindfolded Dale and told him to find the chicken that does not contain antibiotics. Bob further asserts that competitors used the phrase

---

[19] Viewing analytics are available at https://www.ispot.tv/ad/ARJ0/sanderson-farms-the-truth-about-chicken-mr-floppy-arms (last viewed June 12, 2017).
[20] Viewing analytics are available at https://www.ispot.tv/ad/ARHb/sanderson-farms-marketing-guru (last visited June 12, 2017).

1   "raised without antibiotics" to get consumers to pay more money. Bob clearly states, "No antibiotics

2   to worry about here"—again giving the impression that Sanderson's Chicken Products do not contain

3   antibiotics. Sanderson posted the "Supermarket" video to its Facebook page on November 22, 2016,

4   where it was viewed more than four million times and shared 922 times, and was then viewed more

5   than 2,230,983 times on YouTube. On broadcast television, "Supermarket" has an estimated

6   108,214,520 impressions.[21]

7       36.     In a fourth video, titled "Cooking Show," Bob wears a green apron and takes issues

8   with competitors' "gimmick" labels claiming "no added hormones or steroids." Dale, also wearing a

9   green apron, says, "It's funny because it's illegal to give chickens added hormones or steroids"—

10  giving the impression that Sanderson's Chicken Products do not contain hormones or steroids. Bob

11  then assures the viewer that Sanderson raises "good, honest chicken." This video was viewed more

12  than 355,629 times on YouTube, 5.5 million times on Facebook after the April 18, 2017 post (this

13  count was observed as of August 22, 2017 and it is more than double the number of views observed

14  at the filing of the original complaint on June 22, 2017 when the total was 2.5 million), and shared

15  on Facebook 680 times. The commercial has an estimated 59,351,385 impressions on broadcast

16  television.[22]

17

18

19

20

21

22

23

24

25

26

27  [21] Viewing analytics are available at https://www.ispot.tv/ad/ArQM/sanderson-farms-chicken-the-truth-about-chicken-supermarket (last visited June 12, 2017).

28  [22] Viewing analytics are available at https://www.ispot.tv/ad/wL7N/sanderson-farms-truth-about-chicken-cooking-show (last visited on June 12, 2017).

*Below is a screenshot of the video titled "Cooking Show."*



37.     A fifth video, titled "Labels," shows Bob and Dale in front of the red barn again, where they assert that some brands use labels to trick people and charge higher prices. They reiterate that "raised without antibiotics" is just marketing speak, because federal law requires that all chickens be clear of antibiotics before they leave the farm—again giving the impression that Sanderson's Chicken Products do not contain antibiotics. The "Labels" video was viewed on YouTube 3,085,567 times as of August 22, 2017, which is nearly double since the filing of the original complaint on June 22, 2017 when the views totaled 1,675,972, viewed 34,000 times on Facebook after the May 3, 2017 post, and shared 374 times on Facebook. The commercial received an estimated 44,239,858 impressions on broadcast television.[23]

38.     For several of these video advertisements, Sanderson flashes across the screen a brief message that is nearly illegible to the viewing public. As an example, the message below states, "[f]ederal law requires that if antibiotics are used while raising chickens, they must have cleared the chickens' systems before they can leave the farm." The message does not clarify for consumers that Sanderson **does** administer or otherwise expose its chickens to antibiotics.



---

[23] Viewing analytics are available at https://www.ispot.tv/ad/w72Z/sanderson-farms-truth-about-chicken-labels (last visited June 12, 2017).

39.     On its website for consumers,[24] Sanderson posted an interactive video titled "What Does It Mean to be 100% Natural?"[25] The animated video, which was removed after Plaintiffs filed their Complaint, is hosted by "Professor Chicken," and states, "But most of all, at Sanderson Farms, being 100% natural means there's only chicken in our chicken," and, "So it's easy for you to make your family a fresh, healthy meal without any hidden ingredients." The video concludes with, "And that's why, for more than 65 years, when we say 100% natural, we mean 100% natural." After Plaintiffs filed suit, Sanderson changed its website. Instead of asserting "100% natural," this URL now presents consumers with the message, "Good Honest Chicken."

*Below is a screenshot of the consumer website representing that the only thing in Sanderson chicken is chicken.*



40.     On its website, Sanderson advertises "The Truth About Hormones," and claims that "The Truth Is" that "Hormones and steroids are never given to chickens in any way. In fact, hormone

---

[24] Sanderson Farms' website, http://www.sandersonfarms.com/ (last visited August 22, 2017).
[25] Sanderson Farms, "Our Philosophy," http://www.sandersonfarms.com/our-philosophy/100-natural/ (last visited on August 22, 2017).

and steroid use in chickens has been banned in the US since the 1950's"[26]—giving the impression that Sanderson's Chicken Products do not contain hormones or steroids and that Sanderson does not expose its chickens to hormones or steroids in anyway.

41.     In its website's Frequently Asked Questions section, Sanderson states, "The truth is, by law, all chickens must be clear of antibiotics before they leave the farm for harvest. So, all USDA inspected chicken you buy—no matter how it was raised—is, in fact, 'antibiotic free'"[27]—giving the impression that the Chicken Products are antibiotic free, when in reality the products are raised with antibiotics, and antibiotic residue can remain in the chickens at slaughter and, upon information and belief, at purchase.

42.     At some point after Plaintiffs filed their Complaint, Sanderson launched a new advertising campaign, including video and radio advertisements, and a revised website. The new video advertisements asserts that "they've got the facts" on Sanderson Farms and that they sell good, honest chicken.[28]

43.     Thus, through its marketing and advertising campaign, including but not limited to its prominent declarations of "100% Natural," Sanderson misleads consumers about how Sanderson raises its birds and what consumers are ingesting when they eat the Chicken Products. "100% Natural," to consumers, means just that—i.e., that the Chicken Products contain nothing but 100% chicken. Consumers do not expect to ingest synthetic antibiotics or other chemicals in a "100% Natural" food.

**B.     Sanderson's Marketing and Advertising Mislead Consumers About Whether the Birds Are Fed, Injected With, or Exposed to Antibiotics or Other Chemicals.**

44.     Through its marketing and advertising campaign, including but not limited to its prominent declarations of "100% Natural," Sanderson misleads consumers about its use of antibiotics and other chemicals.

45.     A 2016 Consumer Reports survey of 1,001 adults in 2016 found that 65% of

---

[26] Sanderson Farms, *supra* note 34.

[27] Sanderson Farms', "Frequently Asked Questions," https://www.sandersonfarms.com/frequently-asked-questions/ (accessed under the heading "Are Chickens Raised Without Antibiotics Safer to Eat?") (last visited August 22, 2017).

[28] Sanderson Farms, https://www.sandersonfarms.com (last visited August 22, 2017).

respondents were concerned that routinely feeding healthy animals antibiotics and other drugs may create new bacteria that cause illnesses that antibiotics cannot cure, and 84% think that the government should require meat from healthy animals routinely fed antibiotics to be labeled as "raised with antibiotics."[29]

46.   In its website's Frequently Asked Questions section, Sanderson states, "Are antibiotics used in chickens to artificially stimulate growth? No. Antibiotics are NOT steroids . . . these birds grow to their full potential 100% naturally"[30]—giving the impression that Sanderson's chickens are raised without antibiotics (especially growth-promoting antibiotics) and steroids.

47.   In its website's Frequently Asked Questions section, reproduced below, Sanderson asks, "Are chickens given all the same antibiotics as humans . . . ?" Sanderson begins its response with "No"[31]—giving the false impression that the chickens were raised without antibiotics for human use.

*Below is a screenshot of the website before Plaintiffs filed their Complaint.*

**ARE CHICKENS GIVEN ALL THE SAME ANTIBIOTICS AS HUMANS, AND WHAT ABOUT ANTIBIOTIC RESISTANCE?**

No. The group of antibiotics most commonly used to treat and prevent disease among chickens in the U.S.—ionophores—are NEVER used in humans.

In reality, very few antibiotics used in human medicine are actually approved by the FDA for use in chickens. In those rare cases, as of January 2017, human-used antibiotics will only be used on chickens to address disease and sickness. In all of those limited cases, the antibiotics must be administered under the exclusive supervision and prescription of a veterinarian at FDA-approved dosages. What's more, the FDA further ensures the medicine has completely cleared the chicken's system before they leave the farm. Veterinary oversight has been our standard practice years before this law was written.

These industry and governmental restrictions on the use of the human-used antibiotics is part of an ongoing effort to prevent any bacteria from becoming resistant to antibiotics, which is actually an ongoing genetic phenomenon in nature. In fact, it is not uncommon for bacteria to be resistant to multiple antibiotics. While some have theorized a "superbug" could somehow be formed from this, the FDA refuted this notion, stating, "it is inaccurate and alarmist to define bacteria resistant to one, or even a few, antibiotics as 'Superbugs' if these same bacteria are still treatable by other commonly used antibiotics."

---

[29] Consumer Reports National Research Center, *supra* note 32, at 2-3.
[30] Sanderson Farms, *supra* note 45.
[31] Sanderson changed this response after Plaintiffs' filed their Complaint. The new response is available at https://www.sandersonfarms.com/frequently-asked-questions/ (last visited August 22, 2017).

1    48.    Sanderson posts on its website an infographic titled, "The Rumor Roost: Common

2    Myths and Misconceptions of the Poultry Industry."[32] The purported myth, according to Sanderson,

3    is, "If chickens use the same antibiotics as people, those antibiotics will become ineffective to humans

4    over time." Sanderson continues, "Actually. . . the types of antibiotics used for chickens are different

5    from the ones commonly used by humans"—giving the false impression that the chickens were raised

6    without antibiotics for human use.

7    *Below is a screenshot of the Rumor Roost infographic.*



23    49.    The Rumor Roost infographic continues with a so-called myth that "Unnecessary

24    antibiotics are used in poultry." Sanderson states, "Sanderson Farms does not use unnecessary

25    antibiotics in their poultry. Dr. Phil Stayer explains, 'We don't think any antibiotics used in Sanderson

26    Farms flocks are unnecessary. We don't order antibiotics to be used unless the veterinarians deem

---

[32] Sanderson Farms, "The Rumor Roost," https://www.sandersonfarms.com/wp-content/uploads/2016/07/RumorRoost_V11-1.compressed.pdf (last visited August 22, 2017).

them needed for flock health reasons'." Upon information and belief, this is false, misleading, and deceptive, because Sanderson does use antibiotics unnecessarily, prophylactically, and for profit-related rationales instead of in response to particular flock health needs.

50. Sanderson posts deceptive, false, and misleading representations about its Chicken Products on Facebook, and engages consumers who comment. Some of these comments further make Sanderson aware of its deceptive marketing practices, particularly regarding the confusion.

*Below is a Facebook conversation in which users complain about misleading advertising.*

 **Eric Hartman** Whether or not antibiotics are a problem, this commercial is misleading and deceptive. It speaks of "raised without" and "cleared of antibiotics before sale" as if they are one and the same. Sanderson farms knows that they are not the same thing, and shouldnt try to mislead people that they are.

Like · Reply · 🔵 40 · September 5 at 10:13am

 **Sanderson Farms Chicken** Hi Eric, we completely understand your concern and value your opinion. You are correct in that "raised without antibiotics" and "clear of antibiotics" don't necessarily mean the same thing. However, either definition, under USDA inspection, still produces chicken meat without antibiotic residues. It doesn't matter the brand name or the labels on the package; if it is USDA inspected, you can be sure it's free of antibiotics. The reason our veterinarians prescribe antibiotics are for your safety and the health of the chickens as well as the environmental sustainability. Sick chickens not treated with antibiotics carry higher levels of bacteria and can post a greater risk to your health. Chickens raised without antibiotics may endure unnecessary suffering for no apparent consumer or environmental benefit. If you'd like to learn more about our company practices you can find more information on our website here:
http://www.sandersonfarms.com/products/faqs/



Frequently Asked Questions | Sanderson Farms

SANDERSONFARMS.COM

Like · Reply · 🔵 3 · September 6 at 8:21am

 **Eric Hartman** Sanderson Farms Chicken I'm not necessarily trying to say that antibiotics are a bad thing in chickens, and I'm also not trying to dispute usda's policy on use of antibiotics or regulations for clearing chickens of antibiotics. I've got no problem buying or eating Sanderson farms chicken. What I am saying is that this is deceptive marketing where the message about antibiotics is not presented clearly and openly

Like · Reply · 🔵 2 · September 6 at 9:38am

 **Sanderson Farms Chicken** Eric, thanks for making your concerns clear. As far as our advertisements, we're sorry you feel that we are being misleading. That is quite the opposite of what we intended. The primary goal of our advertising efforts is simply to better educate American consumers about chicken so they can make informed purchasing decisions.

Like · Reply · 🔵 7 · September 6 at 10:05am

**Tony Evans** Sanderson Farms Chicken you know they are misleading. That's your marketing department's sole intention.

Like · Reply · 🔵 4 · September 22 at 7:35pm

*Below is a second Facebook conversation in which a user complains about misleading advertising.*


**Dannielle Eidson** You should be ashamed of your commercial that uses deception to try to fool folks into believing that your chicken is just as good as chicken that is RAISED antibiotic free! You are part of the problem! I will never buy anything from you again! 👎

Like · Reply · 🔵 1 · September 19 at 11:38am


**Sanderson Farms Chicken** We sincerely appreciate your feedback regarding our advertising, Danielle. The intent of our current ads about antibiotics in poultry is intended to help educate consumers. Many of our competitors advertise that their products are antibiotic free and we wanted to help consumers understand that all chicken you buy at the grocery store is free of antibiotics whether they were used or not while raised on the farm. We conducted a lot of consumer research on this issue and learned consumers are very confused about many of the marketing terms and claims currently seen in the marketplace such as Raised Without Antibiotics, Raised Cage Free and No Added Hormones or Steroids so we are hoping to help educate consumers as to what these claims mean and if they are worth paying more for. We apologize if we have offended you and we do appreciate your feedback. I hope you'll visit our website to learn more about The Truth About Chicken here: http://bit.ly/2agCcFa


Sanderson Farms®
Find Chicken recipes, cooking tips, and learn why Sanderson Farms 100% natural chicken is the...
SANDERSONFARMS.COM

Like · Reply · 🔵 3 · September 19 at 11:56am

51.     Sanderson knows—and as set forth above, has been reminded via social media—that consumers believe that "natural" means the chickens who wind up in its Chicken Products were not injected with or otherwise exposed to antibiotics and/or drugs. Sanderson also knows that, contrary to the impression it is misleadingly giving consumers, its chickens *were* injected with or otherwise exposed to antibiotics and/or other drugs.

### C.     Sanderson's Marketing and Advertising Misleads Consumers About the Conditions in Which Its Chickens Are Raised and Killed.

52.     Through its marketing and advertising campaign, including but not limited to its prominent declarations of "100% Natural," Sanderson misleads consumers about the conditions in which its chickens are raised.

53.     According to a 2016 Consumer Reports survey of 1,001 adults, 68% of respondents are extremely or very concerned that feeding healthy animals antibiotics may allow animals to be raised in crowded and unsanitary conditions, 53% of respondents are extremely or very concerned

that antibiotic use may lead to environmental pollution, and 51% of respondents are extremely or very concerned that antibiotic use may artificially promote growth.[33]

54.    According to the 2016 survey, 87% percent of respondents think that animals should not be given hormones, ractopamine, or other growth promoting drugs, and 88% percent think that the government should require that meat raised with hormones or ractopamine be labeled as such.[34]

55.    Consumers care about animal welfare, and many are willing to pay extra money for products that they believe come from animals who were treated humanely, as numerous consumer studies have documented.[35] For instance, a 2007 consumer survey found that 58% of consumers are willing to pay more for animal products labeled as "humanely raised."[36] Similarly, a 2010 survey found that 57% of consumers are willing to pay a premium for "food that promises to be produced according to higher ethical standards."[37]

56.    Sanderson knows the advantages of leading consumers to believe that "100% Natural" suggests humane and environmentally sound animal husbandry. In a press release dated September 6, 2016, Sanderson wrote, "In a 2013 poll by the American Humane Association, 89 percent of consumers surveyed stated they were very concerned about farm animal welfare, and 74 percent stated they were willing to pay more for humanely raised meat, dairy and eggs."[38] On page 4 of its 2016 Annual Report, Sanderson claims, "We go beyond the highest animal welfare standards to support the healthy growth of our chickens and the safety of our products."[39]

57.    Consumers believe "100% Natural" Chicken Products to mean that the chickens were not injected with or exposed to antibiotics and/or other chemicals.

58.    Sanderson's website, prior to Plaintiffs filing their Complaint, bolstered consumers'

---

[33] Consumer Reports National Research Center, *supra* note 37, at 2-3.
[34] *Id.* at 3.
[35] Animal Welfare Institute, *Consumer Perceptions of Farm Animal Welfare*, https://awionline.org/sites/default/files/uploads/documents/fa-consumer_perceptionsoffarmwelfare_-112511.pdf (last visited August 22, 2017).
[36] *Id.* at 8.
[37] *Id.*
[38] Sanderson Farms, "Industry Experts, Veterinarians, and Sanderson Farms Discuss Issues Regarding Animal Welfare" (Sept. 6, 2016), *available at* https://corporate.sandersonfarms.com/press-releases/industry-experts-veterinarians-and-sanderson-farms-discuss-issues-regarding-animal-welfare/.
[39] Sanderson Farms, *supra* note 5.

expectations, stating, "Chickens are raised in spacious, climate controlled houses where they're free to eat, drink and walk around all they want," giving the consumer the false impression that Sanderson's Chicken Products are raised in something other than agro-industrial factory-farm conditions.

59.     On its website for consumers, Sanderson posted an interactive video titled "What Does It Mean to be 100% Natural?" The video, which was removed after Plaintiffs filed suit, is hosted by an animated "Professor Chicken."[40] The video depicts chickens lying on lounge chairs in front of fans and playing volleyball. The text accompanying the volleyball-playing chickens states, "They're all cared for in cage-free and comfortable, climate-controlled houses where they are protected from the elements, predators and diseases." Professor Chicken tells consumers, "All of our chicken houses are large enough to allow the birds to exhibit their natural behaviors. That includes eating, drinking, resting and playing. Look around any house, you'll find our chickens doing all four!"

*Below is a screenshot of the Professor Chicken video.*

60.     Sanderson's representations do not match the reality. Sanderson's use of antibiotics strongly indicate that the birds are raised in intensive-confinement, agro-industrial conditions where cruelty is inherent. While Sanderson represents that its chickens are sipping lemonade and playing volleyball, the Animal Welfare Institute conducted a four-year study of Good Commercial Practice violations, and Sanderson made the list of top six worst offenders.[41] Furthermore, a 2013 investigation revealed that 132 birds entered the scald tank alive due to a mechanical failure.[42]

**IV.     Sanderson's Conduct Has Injured, and Continues to Injure, Consumers.**

61.     Sanderson's conduct has harmed, and continues to harm, California consumers. California consumers did not obtain the full value of their purchase prices because the Chicken Products were not "100% Natural" chicken. Moreover, California consumers bought more Chicken Products, and paid more for them, than they would have, had they known that the Chicken Products may contain antibiotics and other chemicals; had they known that the chickens who end up in the Chicken Products were exposed to antibiotics and other chemicals; or had they known that the chickens who end up in the Chicken Products were not raised in natural conditions.

62.     Sanderson's false and misleading representations and omissions of fact violate the California Unfair Competition Law, California Bus. & Prof. Code § 17200, *et seq.* ("UCL"), and the California False Advertising Law, California Bus. & Prof. Code § 17500, *et seq.* ("FAL"). Plaintiffs seek an order requiring Sanderson to, among other things (1) cease the unlawful marketing of the Chicken Products, and (2) conduct a corrective advertising campaign.

## PARTIES

63.     Defendant Sanderson is a Mississippi corporation with a principal place of business located at 127 Flynt Road, Laurel, Mississippi.

64.     Sanderson is "a fully integrated poultry processing company that produces, processes,

---

[41] Animal Welfare Institute, *The Welfare of Birds at Slaughter in the United States*, at 6, available at https://awionline.org/sites/default/files/products/FA-Poultry-Slaughter-Report-2016.pdf (last visited August 22, 2017).

[42] A scald tank is tank of scalding water designed to loosen feathers from the carcass. *Id* at 12.

1  markets and distributes fresh and frozen chicken products." Sanderson contracts with more than 900

2  independent growers.[43] It has 11 processing plants, 10 hatcheries, eight feed mills and one prepared-

3  foods division. Its operations span five states and 14 cities.[44] Sanderson markets and distributes

4  throughout the nation, including to California.

5       65.    Sanderson processed 3.765 billion dressed pounds of chicken in fiscal year 2016, for

6  net sales of $2.816 billion that same fiscal year.[45]

7       66.    Plaintiff the OCA is a national § 501(c)(3) organization based in Finland, Minnesota

8  and is the only organization in the United States focused exclusively on promoting the views and

9  interests of the nation's millions of organic and socially responsible consumers, approximately

10  110,000 of whom live in California. The OCA's network members include both businesses and

11  individual consumers, and its platform calls for truth and transparency in advertising and labeling of

12  consumer products. The OCA's platform also calls for the transition away from corporate-controlled

13  agriculture that contributes to the growing antibiotic-resistance crisis and produces products high in

14  residues of unhealthful chemicals, antibiotics, growth hormones, and other substances. These

15  corporate-controlled agricultural entities include factory farms that mistreat animals, employ unfair

16  labor practices, put independent farmers at a competitive disadvantage, pollute the environment, and

17  promote poor human health by producing consumer products low in nutritional value and

18  contaminated with non-food substances.

19       67.    Through its "Myth of Natural" and "Truth and Transparency in Labeling" campaigns,

20  the OCA helps consumers navigate the confusing array of advertising campaigns and labels

21  companies use to describe their products. The OCA also works to hold corporations accountable for

22  accurately representing, through labels and advertising, the production methods behind their products

23  as well as the product contents, including non-food substances.

24

25  [43] Sanderson Farms, "Investor Relations," http://ir.sandersonfarms.com/ (last visited August 22, 2017).

26  [44] Sanderson Farms, "History & Values," http://www.sandersonfarms.com/our-philosophy/history-values/ (last visited August 22, 2017). After Plaintiffs filed suit, Sanderson changed this website.

27  Similar information is available online at http://files.shareholder.com/downloads/ABEA-6BBVPE/5005219733x0x923868/3C7FF84F-FE4A-40FF-95E8-

28  BD9DD5886BF9/SAFM_2016_FINALweb.pdf (last visited August 16, 2017).
   [45] Sanderson Farms, *supra* note 5.

68.     As a result of Sanderson's legal violations, the OCA has suffered injury in fact and has lost money or property. Specifically, the OCA has expended its resources to address Sanderson's misrepresentations. When the OCA became aware of Sanderson's misrepresentations, it diverted resources from other OCA programs in order to conduct research on Sanderson's agricultural practices and its advertising campaign. The OCA used its own research and research from other organizations to prepare internal memoranda, conduct internal strategy meetings, and develop an outreach strategy in order to counteract Sanderson's false advertising. The OCA also spent significant time making numerous phone calls to other organizations to share the information it had gathered and to develop a coordinated multi-organization outreach strategy. The OCA then developed a call to action for its email list titled, "Tell Sanderson Farms to End the Reckless Use of Antibiotics in its Poultry Factory Farms!" The online alert states, "Sanderson likes to brag that its chicken is '100% natural'. . . What the website doesn't tell you is that Sanderson is 100% committed to the over-use of antibiotics."[46] Members responded by directly contacting Sanderson via email, phone and customer contact forms, and Sanderson's social media (Facebook and Twitter). Most consumers communicated directly with the company, however the OCA managed many responses from its members as well as monitored and responded to concerns that consumers posed directly to the OCA.

69.     This Sanderson-driven work interfered with the OCA's organizational activities by taking staff time and resources away from the OCA's local and national policy and consumer education work on environmental issues, including pesticides, soil and water pollution, and climate change, and genetic engineering, food safety, health, fair trade, economic and social justice issues, as well as the organization's work to protect and strengthen organic standards.

70.     Plaintiff FoE is a national non-profit environmental advocacy organization founded in 1969. FoE has offices in Berkeley, California and Washington, D.C, where it is incorporated. Its mission is to defend the environment and champion a healthy and just world. To this end, FoE promotes policies and actions that ensure the food that we eat and the products that we use are

---

[46] Organic Consumers Association, "Tell Sanderson Farms to End the Reckless Use of Antibiotics in its Poultry Factory Farms!" https://action.organicconsumers.org/o/50865/p/dia/action3/common/public/?action_KEY=18976 (last visited August 22, 2017).

1    sustainable and safe for our health and the environment.

2        71.    FoE has more than 380,000 members in all fifty states, of whom more than 18,000 are

3    in California. Additionally, FoE has more than 1.5 million activists on its email list throughout the

4    United States, with more than 175,000 in California.

5        72.    FoE's "Good Food Healthy Planet" program is focused on reducing the harmful

6    environmental, animal welfare, and public health impacts of industrial animal foods. The program

7    helps grow the consumer market and policy support for healthier, grass-fed and organic meat and

8    dairy, and plant-based foods. FoE's program educates the public about the impact of meat

9    consumption and production, especially related to the issue of antibiotics and other harmful chemicals

10   in animal products. FoE is a co-author of Chain Reaction,[47] an annual report and scorecard that grades

11   America's top restaurant chains on their policies and practices regarding antibiotic use and

12   transparency in their meat and poultry supply chains. The report also covers the use of hormones and

13   availability of organic and grass-fed options. FoE has campaigned over the past several years to

14   eliminate the routine use of antibiotics in animal agriculture, with a focus on changing the purchasing

15   policies of large restaurant chains, who buy large quantities of industrial meat.

16       73.    FoE, which has more than a dozen staff based in Berkeley, California, co-authored a

17   report in 2015 titled "Spinning Food: How Food Industry Front Groups and Covert Communications

18   Are Shaping the Story of Food,"[48] addressing the issues related to chemical-intensive industrial

19   agriculture. Berkeley-based FoE staff also educated the public through blog posts in 2015 titled,

20   "Antibiotic Resistance—with a side order of fries?"[49] FoE's Berkeley staff authored "Redefining

21   Good Food at the Nation's Largest Casual Restaurant Company,"[50] an article produced as part of the

22   Good Food Now campaign that was partially focused on the need to change Darden Restaurant's

23   sourcing practices around industrial meat production and the use of antibiotics. Sanderson sells its

---

[47] FoE's Chain Reaction report and restaurant scorecard is available at http://www.foe.org/
projects/food-and-technology/good-food-healthy-planet/chain-reaction (last visited August 22,
2017).
[48] The report is available at http://www.foe.org/news/archives/2015-06-big-food-and-chemical-
corporations-spend-millions-to-attack-organic (last visited August 22, 2017).
[49] Blog post available at http://www.foe.org/news/blog/2015-09-antibiotic-resistance-with-a-side-
order-of-fries (last visited August 22, 2017).
[50] Article available at https://foodrevolution.org/blog/redefining-good-food-darden-restaurants/ (last
visited August 22, 2017).

chicken to Darden Restaurants.

74.     As a result of Sanderson's legal violations, FoE has suffered injury in fact and has lost money or property. FoE has diverted staff time and resources away from its core organizing and policy work, including research and promotion of plant based foods in k-12 schools; research, policy development, and consumer education around organic agriculture; a campaign to get In-N-Out Burger to serve a grass-fed organic burger; and FoE's efforts to get cities and counties to address climate change through reduced meat consumption, in order to focus on educational efforts and campaigns designed to expose the truth about Sanderson's animal raising practices in order to counteract Sanderson's deceptive advertising. As part of this work, FoE staff members have devoted significant resources to educating and mobilizing its members and consumers around concerns about the harmful heath impacts that arise from the misuse of antibiotics. In particular, FoE has spent hundreds of hours researching Sanderson's customers (particularly Darden restaurants) and educating these customers on Sanderson's practices by sending thousands of emails, making hundreds of telephone calls, holding dozens of internal coalition calls, setting up a website, giving presentations and formal advice to investors that are involved in Sanderson's supply chain, writing numerous blogs and educating and organizing other non-profit organizations, FoE's members, and the public through media and direct outreach.[51] FOE spent considerable time organizing more than a dozen nonprofits to deliver over 100,000 petitions to Olive Garden (a major buyer of Sanderson Farms) asking them to stop sourcing from companies that use routine antibiotics. FoE has been quoted in reports by CNN,[52] Reuters,[53] and Huffington Post[54] to address antibiotics in meat. FoE and its allies, including Center for Food Safety,

---

[51] Alternet, "Olive Garden's Chief Got a Leadership Award—Even Though His Company Is Bad for Workers, Animals and the Environment" (Oct. 24, 2016), http://www.alternet.org/food/olive-gardens-chief-got-leadership-award-even-though-his-company-bad-workers-health-animals-and.
[52] CNN, "USDA doesn't care if our diets are climate friendly – but Americans do" (Oct. 7, 2015), http://www.cnn.com/2015/10/07/opinions/sutter-usda-dietary-guidelines-climate/.
[53] Reuters, "U.S. fast-food meat still mostly raised on antibiotics" (Sept. 15, 2015), *available at* http://www.reuters.com/article/restaurants-antibiotics-idUSL1N11K20Q20150915.
[54] Huffington Post, "Subway Is Transitioning To Antibiotic-Free Meat" (Oct. 20, 2015), http://www.huffingtonpost.com/entry/subway-antibiotic-free-meat_us_5626a723e4b0bce34702bc85.

have spent considerable time researching and drafting two major reports and scorecards[55] (Chain Reaction I and II) that grade America's top restaurant chains, including several Sanderson Farms' customers who received F grades—Dairy Queen, Denny's, Arby's, Chili's, and Olive Garden—on their policies and practices regarding antibiotic use and transparency in their meat and poultry supply chains.

75.     Plaintiff CFS is a national nonprofit environmental and consumer advocacy organization that empowers people, supports farmers, and protects the earth from the harmful impacts of industrial agriculture. Through groundbreaking legal, scientific, and grassroots action, CFS protects and promotes the public's right to safe food and the environment. CFS has four offices nationally, including one in Washington, D.C. and one in San Francisco, California, where it conducts much of its policy work and litigation challenging the use of pharmaceuticals and chemicals in industrial animal agriculture. CFS has more than 900,000 consumer and farmer supporters across the country, with 103,631 in California.

76.     CFS's "Animal Factories" program uses regulatory action, citizen engagement, litigation, and legislation to promote transparency and accountability in the food animal industry. Through this work, the program aims to reduce the harmful impacts of animal factories on animal welfare, the environment, and human health and to increase consumer awareness, availability, and accessibility of suitable alternatives by highlighting humane, organic, and pasture-based animal-raising practices and producers. Since 2009, CFS's Animal Factories program has developed expertise and multi-faceted strategies on addressing the known impacts and lack of robust information on approved animal drugs. CFS is a co-author of the annual Chain Reaction report and scorecard, ranking the top 25 U.S. restaurant chains based on implementation of policies restricting antibiotics use in their meat and poultry supply chains. In coalition with several groups, CFS has also launched several public pressure campaigns against individual restaurant chains to encourage strong commitments addressing antibiotics use, including campaigns against Subway and In-N-Out Burger.

77.     CFS's innovative work on animal drugs has long extended beyond antibiotics to

---

[55] Center for Food Safety's Chain Reaction II report and restaurant scorecard is available at http://www.centerforfoodsafety.org/reports/4471/chain-reaction-ii-how-top-restaurants-rate-on-reducing-use-of-antibiotics-in-their-meat-supply (last visited August 22, 2017).

include the use of natural hormones, synthetic hormones, beta-agonists, heavy metal compounds, and antiparasitics, commonly used for non-therapeutic, production purposes like growth promotion or disease prevention. CFS successfully pressured the FDA to withdraw the approval of arsenic-based animal drugs—the only intentional introduction of arsenic in to the food supply—through successful litigation and grassroots mobilization. CFS staff in the San Francisco and Washington, D.C. offices authored the 2014 report, "America's Secret Animal Drug Problem," which highlighted FDA's insufficient oversight of the animal drug approval process and the lack of publicly available scientific information demonstrating the safety of several approved animal drugs for human health, animal welfare, and the environment. Leveraging information gathered in this foundational report, CFS staff continues to educate consumers about concerns of approved animal drugs through regular blog posts. Additionally, a 2016 factsheet, "Pharming Profits: The Drugs that Make Cheap Meat," provides an update to the 2014 report.

78.     CFS has also spent considerable resources promoting transparency in advertising and labeling and providing consumers with information about the meaning and integrity of common advertising and label claims. This has included raising awareness of the lack of a federal definition for the term "natural" on food product labels and advertising. To help ensure that consumers are not misled by the term, CFS staff in California published a simple factsheet, "What's in a Label? Natural: Another Name for Conventionally Grown."

79.     CFS is also a co-author of Chain Reaction and Chain Reaction II. These reports uncovered that several of Sanderson's customers—Dairy Queen, Denny's, Arby's, Chili's, and Olive Garden—received an "F" grade for failing to take steps to end the misuse of medically important antibiotics in their chicken supply chain. Based on this data, CFS deduced that several of the 16 companies that were refusing to phase out antibiotics were sourcing from Sanderson, the only company of the top four chicken producers that had made no commitment to reduce the use of antibiotics.

80.     In 2016, CFS diverted resources and more than 100 hours of staff time away from its core mission as a government watchdog organization with a focus on challenges to administrative agency actions in order to devote sufficient time to address these companies'—Sanderson's

1   customers'—failures to remove antibiotics from their supply chain. As part of this effort, CFS drafted

2   and edited a petition expressing consumer dissatisfaction with Sanderson's customers that were

3   failing to address antibiotics in their supply, developed language for public outreach and alerts to CFS

4   members, created social media posts and a landing page on CFS's website to circulate and promote

5   the petition to CFS members and the public. CFS also directly contacted the executive leadership of

6   the 16 failing companies about the petition and delivered the letters and more than 125,000 signatures

7   electronically to the corporate headquarters of each failing company. CFS staff wrote and published

8   a press release and a blog announcing the delivery of the petition and signatures to all 16 companies,

9   and responded to media inquiries regarding the campaign.

10        81.    Plaintiffs bring this action on behalf of the general public, and on behalf of their

11   members and supporters, who actively seek and wish to purchase organic, natural, and/or socially

12   responsible products and who were deceived by Sanderson's marketing campaign. Plaintiffs'

13   members and supporters have purchased Sanderson's products based on Sanderson's false marketing

14   materials and material misrepresentations about its Chicken Products. Plaintiffs' members are harmed

15   because but for the false advertising and unfair competition, they would not have purchased these

16   products, particularly because Sanderson uses unnatural substances.

17        82.    Because of Sanderson's false marketing materials, Plaintiffs have had to devote

18   organizational resources to counteract misinformation, educating consumers about this and other

19   "natural" claims, advocating for stronger standards for the "natural" claim that fall in line with

20   consumer expectations, and publicizing the truth about Sanderson's farming practices. This

21   misleading advertising of "100% Natural" products has caused Plaintiffs to divert their organizational

22   resources away from other priorities and campaigns that could have protected more consumers. The

23   injury to Plaintiffs is not speculative; instead, expenses incurred by the efforts described above, which

24   resulted from Sanderson's unlawful conduct, could have been spent in ways that better furthered

25   Plaintiffs' mission had Sanderson not launched its misleading "Truth About Chicken" campaign.

26        83.    If Sanderson were to cease its "natural" advertising claims and its "Truth About

27   Chicken" advertising campaign, including by the injunctive relief sought through this action,

28   Plaintiffs would not have to continue diverting organizational resources to warn consumers and

1  educate the public about Sanderson's products and chicken raising practices, and could redirect these

2  resources to other projects, in furtherance of their respective missions.

3  **JURISDICTION AND VENUE**

4  84.     This case arises under California Bus. & Prof. Code § 17203, which provides that any

5  person who engages, has engaged, or proposes to engage in unfair competition may be enjoined in

6  any court of competent jurisdiction. As more fully alleged in this Complaint, Sanderson's

7  misrepresentations and omissions of material fact in its marketing of the Chicken Products constitute

8  false advertising under California Bus. & Prof. Code § 17500. This Court has subject-matter

9  jurisdiction over this action pursuant to 28 U.S.C. § 1332 (diversity).

10  85.     This Court has personal jurisdiction over the parties in this case. Plaintiff the OCA

11  maintains a presence in Alameda County with approximately 3,460 subscribers in the County, and

12  by filing this Complaint, consents to this Court having personal jurisdiction over it. Plaintiff FoE

13  maintains a presence in Alameda County, including its Berkeley office located at 2150 Allston Way,

14  Suite 360, Berkeley, California 94704 and, by filing this Complaint, consents to this Court having

15  personal jurisdiction over it. FoE has approximately 134 members in Berkeley, approximately 142

16  members in Oakland, and approximately 1,992 members in the Bay Area counties of Alameda (450),

17  Santa Clara (343), Contra Costa (267), San Francisco (248), Marin (243), Sonoma (202), San Mateo

18  (172), Napa (35), and Solano (32). Plaintiff CFS maintains a presence in San Francisco, California,

19  including its office at 303 Sacramento Street, San Francisco, California 94111. CFS has

20  approximately 4,128 members in San Francisco, approximately 1,837 members in Oakland, and

21  approximately 28,988 members in the Bay Area counties of Alameda (5,789), Santa Clara (4,286),

22  Contra Costa (2,995), San Francisco (4,833), Marin (3,515), Sonoma (3,923), San Mateo (2,207),

23  Napa (655) and Solano (785).

24  86.     Sanderson, a citizen of Mississippi, is authorized to, and in fact does, conduct

25  substantial business in California, including in the Northern District of California. Sanderson

26  purposefully avails itself of the laws of California to market, promote, distribute, and sell the Chicken

27  Products to consumers in California and in the Northern District of California.

28  87.     Venue is proper in this District pursuant to 28 U.S.C. §§ 1391(b), because a

1   substantial portion of the events or omissions giving rise to the claims occurred in this District.

2   Sanderson marketed, advertised, and sold Chicken Products in the Northern District of California,

3   and Plaintiffs suffered an injury in the Northern District of California.

4                                   **STATUTORY FRAMEWORK**

5       88.    The UCL, California Bus. & Prof. Code § 17200 *et seq.*, prohibits businesses from

6   engaging in unlawful, fraudulent, or unfair business practices, including violations of other statutes.

7       89.    California Bus. & Prof. Code § 17203 allows any person to pursue representative

8   claims or relief on behalf of others if the claimant meets the standing requirements of California

9   Bus. & Prof. Code § 17204 and California Civ. Proc. Code § 382.

10      90.    Plaintiffs have standing under California Bus. & Prof. Code § 17204, which provides

11  that actions for relief pursuant to the UCL shall be prosecuted exclusively in a court of competent

12  jurisdiction by, *inter alia*, any person who has suffered injury in fact and has lost money or property

13  as a result of the unfair competition.

14      91.    Plaintiffs have standing under California Civ. Proc. Code § 382, which provides that

15  "when the question is one of a common or general interest, of many persons, or when the parties are

16  numerous, and it is impracticable to bring them all before the court, one or more may sue or defend

17  for the benefit of all."

18      92.    The FAL, California Bus. & Prof. Code § 17500, declares it unlawful for any person

19  to disseminate before the public any statement concerning personal property that the person knows,

20  or through the exercise of reasonable care should know, to be untrue or misleading, with intent to

21  dispose of that property or to induce the public to enter into any obligation relating thereto; or to

22  disseminate such untrue or misleading statements as part of a plan or scheme with the intent not to

23  sell the property as advertised.

24      93.    Pursuant to California Bus. & Prof. Code § 17535, any person, association, or

25  organization that violates the FAL may be enjoined by any court of competent jurisdiction. Actions

26  for injunctive relief under the FAL may be prosecuted by any person who has suffered injury in fact

27  and has lost money or property as a result of a violation of the FAL, and the court may make such

28  orders or judgments which may be necessary to restore to any person in interest any money or

property which may have been acquired by means declared to be unlawful by the FAL.

## CAUSES OF ACTION

### COUNT I
#### (Violation of California Unfair Competition Law – California Bus. & Prof. Code § 17200, *et seq.*)

94.    Plaintiffs incorporate by reference and re-allege the preceding paragraphs.

95.    Sanderson engaged in unlawful, unfair, and/or fraudulent conduct under the California UCL, California Business & Professions Code § 17200, *et seq.*, by representing in its advertising that the Chicken Products are "100% Natural" food products.

96.    Sanderson engaged in unlawful, unfair, and/or fraudulent conduct under the California UCL, California Business & Professions Code § 17200, *et seq.*, by representing in its advertising that its chickens are raised with "100% Natural" farming procedures.

97.    Sanderson's conduct is unlawful in that it violates the California False Advertising Law ("FAL"), California Business & Professions Code § 17500 *et seq.*, described more fully in Count II.

98.    Sanderson's conduct is unfair in that it offends established public policy and/or is immoral, unethical, oppressive, unscrupulous, and/or substantially injurious to Plaintiffs, Plaintiffs' members, and California consumers. The harm to Plaintiffs arising from Sanderson's conduct outweighs any legitimate benefit Sanderson derived from the conduct. Sanderson's conduct undermines and violates the stated spirit and policies underlying the FAL and other legal regulations as alleged herein.

99.    Sanderson's advertising actions and practices with regard to the food product and the farming practices constitute "fraudulent" business practices in violation of the UCL because, among other things, they are likely to deceive reasonable consumers. As a direct and proximate result of Sanderson's violations, Plaintiffs suffered injury in fact because they were forced to divert substantial organizational resources away from their core missions. Sanderson's unlawful encouragement of such practices have frustrated Plaintiffs' efforts to promote transparency in the food system.

100.    Plaintiffs seek (a) injunctive relief in the form of an order requiring Sanderson to cease the acts of unfair competition alleged herein and to correct its advertising, promotion, and marketing

1  campaigns; (b) interest at the highest rate allowable by law; and (c) the payment of Plaintiffs'

2  attorneys' fees and costs pursuant to, *inter alia*, California Code of Civil Procedure Section 1021.5.

## COUNT II
### (Violation of California False Advertising Law – California Bus. & Prof. Code § 17500, *et seq.*)

101.    Plaintiffs incorporate by reference and re-allege the preceding paragraphs.

102.    Sanderson publicly disseminated untrue or misleading advertising, or intended not to sell the Chicken Products as advertised, in violation of the California FAL, Business & Professional Code § 17500, *et seq.*, by representing that the Chicken Products are "100% Natural" food products when they are not.

103.    Sanderson publicly disseminated untrue or misleading advertising, or intended not to sell the Chicken Products as advertised, in violation of the California FAL, Business & Professional Code § 17500, *et seq.*, by representing that its farming procedures "100% Natural" when they are not.

104.    Sanderson publicly disseminated untrue or misleading representations in its advertising regarding the Chicken Products, which it knew, or in the exercise of reasonable care should have known, were untrue or misleading, in violation of the FAL.

105.    As a direct and proximate result of Sanderson's violations, Plaintiffs suffered injury in fact because they were forced to divert substantial organizational resources away from their core missions. Sanderson's unlawful encouragement of such practices have frustrated Plaintiffs' efforts to promote on behalf of the general public transparency in the food system.

106.    Plaintiffs seek (a) injunctive relief in the form of an order requiring Sanderson to cease the acts of unfair competition alleged herein and to correct its advertising, promotion, and marketing campaigns; (b) interest at the highest rate allowable by law; and (c) the payment of Plaintiffs' attorneys' fees and costs pursuant to California Code of Civil Procedure Section 1021.5, *inter alia*.

## JURY DEMAND

Plaintiffs demand a trial by jury of all claims in this Complaint so triable.

1

## **REQUEST FOR RELIEF**

2        WHEREFORE, Plaintiffs respectfully request that the Court enter judgment in their favor and

3   against Sanderson, as follows:

4        A.      Declaring that Sanderson violated the UCL and FAL;

5        B.      Ordering an accounting by Sanderson for any and all profits derived by Sanderson

6   from its herein-alleged unlawful, unfair, and/or fraudulent conduct and/or business practices;

7        C.      Ordering an awarding of injunctive relief as permitted by law or equity, including

8   enjoining Sanderson from continuing the unlawful practices as set forth herein, and ordering

9   Sanderson to engage in a corrective advertising campaign;

10       D.      Ordering Sanderson to pay attorneys' fees and litigation costs to Plaintiffs pursuant to

11  California Code of Civil Procedure Section 1021.5 and the common-law private-attorney-general

12  doctrine;

13       E.      Ordering Sanderson to pay both pre- and post-judgment interest on any amounts

14  awarded; and

15       F.      Ordering such other and further relief as may be just and proper.

16

17

18

19

20

21

22

23

24

25

26

27

28

Dated: June 25, 2018                    Respectfully submitted,

**RICHMAN LAW GROUP**

_Kim E. Richman_ signature

Kim E. Richman (*Pro Hac Vice*)
krichman@richmanlawgroup.com
Jaimie Mak, Of Counsel (CSB No. 236505)
jmak@richmanlawgroup.com
Jay R. Shooster (*Pro Hac Vice*)
jshooster@richmanlawgroup.com
81 Prospect Street
Brooklyn, NY 11201
Telephone: (212) 687-8291
Facsimile: (212) 687-8292

**ELSNER LAW & POLICY, LLC**

_Gretchen Elsner_ signature

Gretchen Elsner (*Pro Hac Vice*)
150 Washington Avenue, Suite 201-220
Santa Fe, NM 87501
Telephone: (505) 303-0980
gretchen@elsnerlaw.org

**CENTER FOR FOOD SAFETY**

_Adam Keats_ signature

Adam Keats (CSB. No. 191157)
303 Sacramento Street, 2nd Floor
San Francisco, CA 94111
Telephone: (415) 826-2770
akeats@centerforfoodsafety.org

*Counsel for Plaintiffs*