**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**SAN FRANCISCO DIVISION**

| | |
|---|---|
| FRIENDS OF THE EARTH, and CENTER FOR FOOD SAFETY,<br><br>　　　　Plaintiffs,<br>　vs.<br><br>SANDERSON FARMS, INC.,<br><br>　　　　Defendant. | CASE NO. 3:17-CV-03592 (RS)<br><br>**JOINT LETTER REGARDING SANDERSON CHALLENGE TO PLAINTIFFS' ASSERTIONS OF FIRST AMENDMENT PRIVILEGE**<br><br>Judge:　　Honorable Sallie Kim<br>Date:　　　August 27, 2018<br>Location:　Courtroom A, 15th Floor<br>　　　　　450 Golden Gate Avenue<br>　　　　　San Francisco, CA 94102 |

　　The parties seek resolution of a discovery dispute regarding the assertion of First Amendment privilege by Plaintiffs Friends of the Earth ("FoE") and the Center for Food Safety ("CFS") as part of their privilege logs served on Sanderson Farms, Inc. ("Sanderson") on August 1, 2018. The parties have met and conferred telephonically regarding this issue, have complied with Section 9 of the Northern District of California's Guidelines for Professional Conduct, and are unable to reach agreement.

　　The parties agree that the filing of this joint letter moots Sanderson's requests in ECF No. 91.

　　Jointly Submitted,


/s/*Adam Keats*　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　
Adam Keats　　　　　　　　　　　　　　　Michael A. Glick
CENTER FOR FOOD SAFETY　　　　　KIRKLAND & ELLIS LLP
*Counsel to Plaintiffs*　　　　　　　　　　　*Counsel to Sanderson*

Judge Kim:

Pursuant to the Court's Standing Order dated April 18, 2017, the parties submit this joint letter regarding Sanderson's challenge to Plaintiffs' assertion of an associational First Amendment privilege over portions of numerous documents, as provided on Plaintiffs' privilege logs. A copy of Plaintiffs' privilege logs are attached as Exhibits A and B, respectively.

## I.   STATEMENT OF THE UNRESOLVED DISPUTE

On August 1, 2018, the parties exchanged preliminary privilege logs. Plaintiffs' logs (two total) comprised a combined 18 pages and 108 entries. *See* Exs. A-B. After a review of Plaintiffs' logs, Sanderson asked Plaintiffs to withdraw their claims of First Amendment privilege—and accompanying privilege log redactions—over identifying and other information in certain communications (over 100) logged by Plaintiffs.[1] Following correspondence and a meet-and-confer teleconference on these issues, Plaintiffs declined to withdraw their privilege claims and redactions.

Non-Expert Discovery is scheduled to close on September 14, 2018, and dispositive motion briefing is scheduled for early 2019. Trial is not currently scheduled.

## II.   SUMMARY OF THE PARTIES' FINAL SUBSTANTIVE POSITIONS

### A.   Sanderson's Position

This dispute arises from Plaintiffs' inappropriate use of the First Amendment privilege to rob Sanderson of relevant, discoverable information as well as the ability to test the strength of Plaintiffs' privilege claims. Plaintiffs first raised the prospect of asserting such privilege when it served its responses and objections to Sanderson's Requests for Production on April 16, 2018. Sanderson immediately questioned the propriety of such privilege assertion under the circumstances, and Plaintiffs indicated that to the extent that Plaintiffs withheld responsive documents (or portions thereof) on the basis of purported associational rights, Plaintiffs would identify such documents in their privilege log.

After producing only 245 documents through five months of discovery, Plaintiffs served their privilege logs on August 1, 2018. The majority of the entries on Plaintiffs' logs were for redactions made pursuant to a claim of First Amendment privilege. Such redactions, which appear on at least 103

---

[1] Sanderson also identified other concerns with Plaintiffs' logs. The parties are still conferring over those issues, and Sanderson may raise those issues with the Court if the parties cannot resolve them

emails produced by Plaintiffs, are emblematic of Plaintiffs' approach to discovery in this case: minimize the disclosure and production burden on their organizations, all the while insisting on a maximalist, "show me more" approach from Sanderson. Plaintiffs' First Amendment privilege is not well-founded under the circumstances of this case and Plaintiffs' privilege logs do not comply with the Court's Standing Order, nor precedent or practice in this District.

The Standing Order requires Plaintiffs to identify "[t]he identity and position of [the] author(s)," "[t]he identity and position of all addressees and recipients," and "[t]he subject matter addressed in" logged communications subject to a claim of privilege. Plaintiffs' logs do not come close to that standard for entries related to their First Amendment privilege claims: of the 95 entries on FoE's log, the author field is redacted in 83 entries and the recipient filed is redacted (at least in part) in 68 entries; likewise, CFS redacts information in 10 of 13 author fields and all but one of its 13 recipient fields.

Plaintiffs do not dispute that their logs do not comply with the terms of the Standing Order, but instead claim that the Order does not apply to the information purportedly subject to First Amendment privilege in this case. That position is untenable and wrong as a matter of law for several reasons. Accordingly, Sanderson requests that the Court reject Plaintiffs' assertion of First Amendment privilege and order the production of un-redacted documents consistent with Plaintiffs' discovery obligations.

1. **Plaintiffs have put their communications at issue, waiving the privilege.**

As a threshold matter, Plaintiffs have waived any such privilege by placing their intra- and inter-organizational communications and conduct at issue in this case. *See* 2d Am. Compl. ¶¶ 68-69, 74, 80, 82. Plaintiffs allege, for instance, that they "spent hundreds of hours . . . sending thousands of emails . . . giving presentations and formal advice to investors that are involved in Sanderson's supply chain . . . writing numerous blogs and educating and organizing other non-profit organizations." *See* 2d Am. Compl. ¶ 74, ECF No. 78; *see also id.* ¶ 80 (describing efforts to "draft[] and edit[] a petition expressing consumer dissatisfaction . . . develop[ment] of language for public outreach and alerts . . . [and] creat[ion] of social media posts").

Having relied on their intra- and inter-organizational advocacy to allege standing, Plaintiffs cannot now shield the nature, extent, context, and participants of those communications and efforts in discovery. Plaintiffs' "allegations opened discovery regarding its" activities with other organizations

"because it put their rights at issue." *See Paralyzed Veterans of Am. v. McPherson*, 2007 WL 2428000, at *5-7 (N.D. Cal. Aug. 22, 2007). And the cases upholding assertions of associational privilege "are [] distinguishable from this case in key aspects—specifically, "[i]n [those] cases, the association or foundation challenging discovery was pulled into court; it did not choose to go to court." *Id.* (citation omitted). Here, by contrast, Plaintiffs "chose to sue [Sanderson]; [Sanderson] did not bring [Plaintiffs] into court." *See id.* As a result, Plaintiffs have waived any associational privilege over intra- or inter-organizational information relevant to this lawsuit.[2]

### 2.  **Plaintiffs' communications are not subject to First Amendment privilege.**

Even if not waived, Plaintiffs' associational privilege claims lack merit. Unlike the cases cited by Plaintiffs, Sanderson does not seek Plaintiffs' membership lists or information on all of Plaintiffs' members, but rather "only [] information related to" individuals and groups appearing on documents that Plaintiffs admit are otherwise discoverable and relevant. *See id.* at *6. In this way, the "disclosure [in this case] covers only a handful of" members, not Plaintiffs' membership rolls or contributors writ large. *See Nat'l Abortion Fed'n v. Ctr. for Med. Progress*, 2015 WL 13333328, at *3 (N.D. Cal. Nov. 20, 2015).

Furthermore, Plaintiffs "ha[ve] not shown any [] proof of reprisal or chilling effect," other than to to "cite [] the First Amendment in conclusory fashion." *See Paralyzed Veterans*, 2007 WL 2428000, at *7. Plaintiffs' logs—without a shred of support—blankly claim that "disclosure of th[e] [redacted] information would impair the group's associational activities." *E.g.* Ex. B at 1. But Plaintiffs have "not shown that its members would suffer economic reprisal, loss of employment, physical coercion, or any other manifestation of public hostility" were their identities made known. *See Paralyzed Veterans*, 2007

---

[2] To understand how outlandish Plaintiffs' position is, Sanderson notes that Plaintiffs have claimed to redact identifying information for individuals and groups who are not members of their organizations. Plaintiffs have no standing to do so and all of the caselaw Sanderson has been able to uncover involved efforts to obtain far-reaching information about an organization's *members*. *See Chevron Corp. v. Donziger*, 2013 WL 4536808, at *9 (N.D. Cal. 2013) ("The Doe movants do not claim to be part of one group . . . [T]hey challenge the . . . subpoenas for . . . cast[ing] such a wide net that it has ensnared . . . subscribers who are in no way affiliated with this litigation . . . This significantly undercuts their claim to protection under the First Amendment.") (citations omitted). Sanderson is also unaware of any basis in law for Plaintiffs' request to defer ruling on this issue until it can notify non-parties, particularly given the scheduled close of discovery.

WL 2428000, at *7. And other than *ipse dixit*, Plaintiffs' have not even articulated a theory on which their rights would be impaired or chilled.[3] That is not sufficient to overcome Sanderson's request for plainly relevant information. Indeed, Plaintiffs acknowledge that the communications at issue are "about the general subject matter of this litigation." *Infra*, at 5.

3.  **Sanderson is prejudiced by Plaintiffs' redactions.**

The prejudice from Plaintiffs' redactions to over 100 emails in their document production is substantial, meriting production of unredacted documents. Consider, for instance, this excerpt from CFS_0000322 at 24, a redacted document subject to Plaintiffs' associational privilege claim:



Given these redactions, Sanderson cannot effectively evaluate the nature of this communication, nor will it be able to effectively question Plaintiffs' deponents about this communication, lay foundation for its admission, or develop the full context for this discussion absent inquiry into the redacted portions of the document. Moreover—contrary to Plaintiffs' representations to Sanderson—Plaintiffs' have also redacted substantive, public information not subject to any claim of privilege (associational or otherwise):

---

[3] Plaintiffs make much of the fact that Sanderson filed a Rule 11 motion against Plaintiffs for their early complaints in this case in which Plaintiffs alleged that USDA had found a host of residues in Sanderson's chicken. Sanderson notes, however, that its motion was based on Plaintiffs' counsel's pre-litigation conversations with USDA officials, and that following the sworn depositions of those officials, Plaintiffs amended their earlier complaints, voluntarily abandoning the very USDA residue allegations that were the subject of Sanderson's Rule 11 motion. *Compare* ECF No. 31 *with* No. 78.

> On Wed, Feb 21, 2018 at 1:22 PM, ███████████
> ███████ wrote:
>
> Hi all –
>
> We just got confirmation of strongest shareholder vote yet on antibiotics: 43.1% on the Sanderson Farms proposal that we presented at last week's annual meeting.
> Here is our press release: ███████████████████
> And here is our blog post: ████████████████████

CFS_0000314 at 17. Depriving Sanderson—and eventually the fact-finder—of such information is inappropriate, especially given Plaintiffs' failure to articulate any chilling effect or other consequence of producing (in full) otherwise relevant documents.

For these reasons, Plaintiffs should be compelled to produce un-redacted versions of the documents logged subject to First Amendment privilege.

B.   **Plaintiffs' Position**

Sanderson fails to make clear that the only information Plaintiffs have withheld under the First Amendment associational privilege are the names and identifying information of non-party activists who have corresponded with Plaintiffs about some of the issues that support Plaintiffs' standing in this action—nothing more. Plaintiffs have not withheld any substantive information; indeed, all substantive content of all the emails at issue here has been provided to Sanderson, completely un-redacted. The only information that has been redacted has been names, email addresses, and similar specific identifying information (like webside url's) of non-Plaintiff, third-party activists who have exercised their First Amendment rights by communicating with Plaintiffs about the general subject matter of this litigation. Sanderson not only omits this pertinent fact, but also falsely alleges that Plaintiffs have "minimize[d] the disclosure and production burden on their organizations," and falsely states that Plaintiffs' redactions "shield the nature, extent, [and] context … of those communications…." The nature, extent, and context of these communications are plainly revealed in the completely un-redacted substantive text of the emails. The names of the senders or recipients of these emails, or the names of the website url's that may be present, have nothing to do with the "nature, extent, and context" of the communications, and are wholly irrelevant as to whether Sanderson falsely advertised its chicken products.

What Sanderson is after here are people's names and associational identifying information (such as the names of the list-serves within which they may be communicating or the private website address with which they may have shared published press releases). The only potential use of this identifying information of non-parties is to intimidate activists who organize against industry giants. These are activists, engaging in protected speech, and the facts of their identity and association have long been protected by the Constitution, as the Supreme Court made clear in *NAACP v. Alabama*, 357 U.S. 449 (1958). There is a high bar for compelling the disclosure of this kind of information, and Sanderson comes nowhere close to reaching it.

The assertion of the First Amendment privilege, such as that asserted here to justify Plaintiffs' limited redactions, is subject to a two-part test. First, Plaintiffs "must demonstrate...a 'prima facie showing of arguable first amendment infringement.'" *Perry v. Schwarzenegger*, 591 F.3d 1147, 1160 (9th Circ. 2010), quoting *Brock v. Local 375, Plumbers Int'l Union of Am.*, 860 F.2d 346, 349–50 (9th Cir.1988). Plaintiffs accomplish this by "demonstrat[ing] that enforcement of the [discovery requests] will result in (1) harassment, membership withdrawal, or discouragement of new members, or (2) other consequences which objectively suggest an impact on, or 'chilling' of, the members' associational rights." *Id.*, quoting *Brock v. Local 375*, 860 F.2d at 350. If Plaintiffs meet their burden, the burden shifts to the requesting party to "demonstrate[] an interest in obtaining the disclosures it seeks ... which is sufficient to justify the deterrent effect ... on the free exercise ... of [the] constitutionally protected right of association." *Id.*, quoting *NAACP v. Alabama*, 357 U.S. 449, 463 (1958).

Plaintiffs satisfy their burden by making clear, as they did to Sanderson in multiple meet-and-confer phone calls, that what has been redacted are just the names and identifying information like email addresses of non-plaintiff associates of Plaintiffs. The content of the emails—which was provided to Sanderson in full—make plain that the communication was in furtherance of these parties' activism, and thus their protected speech. Moreover, Sanderson's aggressive litigation tactics to date—including this immediate effort to overwhelm Plaintiffs with multiple simultaneous discovery disputes, with onerous, impossible-to-meet deadlines for responses, as well as Sanderson's unsuccessful attempt to seek Rule 11 sanctions against Plaintiffs' attorneys for filing Plaintiffs' First Amended Complaint—objectively demonstrate the potential chilling effect on the associational rights of the communicators. For it is

obvious what the consequences will be of disclosure of these identities: onerous discovery and/or other litigation tactics directed at third-party activists by Sanderson. Given Sanderson's willingness to file a Rule 11 sanctions motion against Plaintiffs' attorneys *on a complaint*, it is completely reasonable for any person engaged in associational activities with Plaintiffs to expect to be subject to similar—or worse—litigation tactics if their identity is disclosed. Plaintiffs have willingly exposed themselves to this abuse by bringing this lawsuit; the non-Plaintiff activists have not, and there is no reason to pull them into this morass.

For its part, Sanderson has failed its burden, failing to demonstrate that the deterrent effect of disclosure is justified. Sanderson claims that it is prejudiced by the redactions, which Sanderson falsely claims are "substantial." But prejudice itself is not the test; the question is whether the harm to associational rights is outweighed by the interest of the requesting party. Sanderson could demonstrate this by "show[ing] that the information sought is highly relevant to the claims or defenses in the litigation—a more demanding standard of relevance than that under Federal Rule of Civil Procedure 26(b)(1). The request must also be carefully tailored to avoid unnecessary interference with protected activities, and the information must be otherwise unavailable." *Perry v. Schwarzenegger*, 591 F.3d at 1161.

The best Sanderson offers to meet this standard is its vague allegations that its "prejudice from Plaintiffs' redactions to over 100 emails…is substantial," that it "cannot effectively evaluate the nature of this communication," and that it cannot "effectively question Plaintiffs' deponents about this communication, lay foundation for its admission, or develop the full context for this discussion" absent the redacted names and identifying information. These claims are all obviously unsupportable, considering that 100% of the substantive content of the emails has been produced in un-redacted form.

Sanderson points to two examples of what it claims is substantial prejudice and redacted substantive information, but neither example includes any substantive information, let alone demonstrates any relevance to the claims or defenses in the litigation, as required by the Ninth Circuit in its balancing test. The first example, CFS_0000324, shows redactions in the "sender" line (redactions which Plaintiffs have already assured Sanderson are only the names and email addresses of the sender) and redactions to two lines indicating the location (presumably, by context, a website url or hard drive

filename) of documents (a press release and a blog post) that were separately disclosed to Sanderson by Plaintiffs and/or are not relevant at all to this litigation. The second example, CFS_0000317, is equally non-substantive and not sufficiently relevant: the email shows redactions of the "from," "to," and "cc" lines. This email was included in a string of emails, of which only later emails involved any Plaintiffs. This is why all of the names and addresses were redacted in this particular email; as Plaintiffs have already explained to Sanderson, the names and email addresses of any Plaintiffs (including employees, directors, or officers) were never redacted.

Finally, Plaintiffs are cognizant of the fact that they may not be the ideal parties to be tasked with protecting the associational privileges of third parties. See Footnote 2, above. It is in the interest of judicial economy that Plaintiffs assert the privilege at this stage. But if this court is inclined to compel the disclosure of the redacted information, Plaintiffs request an opportunity to first contact each of the individuals and/or associations involved and permit them an opportunity to assert and defend their privileges themselves, as appropriate.

Jointly Submitted,

_/s/*Adam Keats*_____
Adam Keats
CENTER FOR FOOD SAFETY
*Counsel to Plaintiffs*

_____
Michael A. Glick
KIRKLAND & ELLIS LLP
*Counsel to Sanderson*

Attachment

**ATTESTATION PURSUANT TO CIVIL L.R.5-1(i)(3)**

I, Michael A. Glick, am the ECF User whose ID and password are being used to file this document. I hereby attest that concurrence in the filing of this document has been obtained from the signatory.