Mark McKane, P.C. (SBN 230552)
mark.mckane@kirkland.com
KIRKLAND & ELLIS LLP
555 California Street
San Francisco, California 94104
Telephone: (415) 439-1400
Facsimile: (415) 439-1500

Gregg F. LoCascio, P.C. (admitted *pro hac vice*)
gregg.locascio@kirkland.com
Michael Glick (admitted *pro hac vice*)
michael.glick@kirkland.com
Terence J. McCarrick (admitted *pro hac vice*)
terence.mccarrick@kirkland.com
KIRKLAND & ELLIS LLP
655 Fifteenth Street, N.W.
Washington, D.C. 20005
Telephone: (202) 879-5000
Facsimile: (202) 879-5200

*Attorneys for Defendant*
*Sanderson Farms, Inc.*

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**SAN FRANCISCO DIVISION**

| | |
|---|---|
| FRIENDS OF THE EARTH, and CENTER FOR FOOD SAFETY,<br><br>Plaintiffs,<br>vs.<br><br>SANDERSON FARMS, INC. a Mississippi corporation,<br><br>Defendant. | CASE NO. 3:17-CV-03592 (RS)<br><br>**DEFENDANT SANDERSON FARMS, INC.'S REPLY IN SUPPORT OF MOTION TO DISMISS THE THIRD AMENDED COMPLAINT**<br><br>Judge: Honorable Richard Seeborg<br>Hearing Date: November 29, 2018<br>Time: 1:30 p.m.<br>Location: Courtroom 3, 17th Floor,<br>       450 Golden Gate Avenue,<br>       San Francisco, CA 94102 |

**TABLE OF CONTENTS**

INTRODUCTION ................................................................................................................................ 1

REPLY ARGUMENT ......................................................................................................................... 3

I.   Plaintiffs' Residue Theory Fails Because They Cannot—and Admittedly Do Not—Allege That Sanderson Chicken Products Sold in California Contain Residues................ 3

II.  Plaintiffs' Opposition Confirms They Cannot State a Claim Based On Sanderson's Use of Antibiotics. ....................................................................................................................... 6

  A.  Plaintiffs Cannot Challenge Unspecified Advertisements or Sanderson's "100% Natural" Slogan In The Abstract. ............................................................... 6

  B.  Plaintiffs' Challenge to Sanderson's Specific Advertisements Are Foreclosed by the Actual Context of the Challenged Statements or Are Otherwise Implausible. ........................................................................................................ 8

III. Plaintiffs Have Not Pled Plausible Claims Based on Sanderson's Chicken-Raising Conditions. ............................................................................................................... 11

IV.  Plaintiffs' Antibiotic Resistance Theory Remains Procedurally Improper and Substantively Deficient. .......................................................................................... 12

  A.  The Brand New Antibiotic Resistance Theory Is Not Curing Prior Pleading Defects. .............................................................................................................. 12

  B.  Plaintiffs Have Not Stated a Plausible Claim Under Their New Theory. ........... 14

CONCLUSION .................................................................................................................................. 15

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ................................................................................................................4

*Bohac v. Gen. Mills, Inc.*,
2014 WL 1266848 (N.D. Cal. Mar. 26, 2014) .........................................................................9

*U.S. ex rel. Cafasso v. Gen. Dynamics C4 Sys., Inc.*,
637 F.3d 1047 (9th Cir. 2011) ...............................................................................................14

*Carrea v. Dreyer's Grand Ice Cream, Inc.*,
475 F. App'x 113 (9th Cir. 2012) ..........................................................................................11

*Castagnola v. Hewlett-Packard Co.*,
2012 WL 2159385 (N.D. Cal. June 13, 2012) .........................................................................9

*Chapman v. Skype Inc.*,
220 Cal. App. 4th 217 (2013) ..................................................................................................7

*Chaquico v. Freiberg*,
2017 WL 4805578 (N.D. Cal. Oct. 24, 2017) ........................................................................14

*Ebner v. Fresh, Inc.*,
838 F.3d 958 (9th Cir. 2016) ...................................................................................8, 9, 10, 14

*Epstein v. Wash. Energy Co.*,
83 F.3d 1136 (9th Cir. 1996) ...................................................................................................5

*Freeman v. Time, Inc.*,
68 F.3d 285 (9th Cir. 1995) .............................................................................................7, 8, 9

*Hadley v. Kellogg Sales Co.*,
273 F. Supp. 3d 1052 (N.D. Cal. 2017) ...................................................................................4

*Hemy v. Perdue Farms, Inc.*,
2011 WL 6002463 (D.N.J. Nov. 30, 2011) ...........................................................................12

*Joe Hand Promotions, Inc. v. Bragg*,
2016 WL 773223 (S.D. Cal. Feb. 29, 2016) ............................................................................7

*Maxwell v. McLane Pac., Inc.*,
2017 WL 8186758 (C.D. Cal. Oct. 19, 2017) .................................................................13, 14

*Moss v. Infinity Ins. Co.*,
197 F. Supp. 3d 1191 (N.D. Cal. 2016) ...................................................................................7

*Stuart v. Cadbury Adams USA, LLC*,
    458 F. App'x 689 (9th Cir. 2011) ...........................................................................................11

*Sugawara v. Pepsico, Inc.*,
    2009 WL 1439115 (E.D. Cal. May 21, 2009) .........................................................................9

*Varsity News Network, Inc. v. Carty Web Strategies, Inc.*,
    2017 WL 7201873 (C.D. Cal. Aug. 30, 2017).........................................................................7

*Vess v. Ciba-Geigy Corp. USA*,
    317 F.3d 1097 (9th Cir. 2003) .................................................................................................5

*Williams v. Gerber Prods. Co.*,
    552 F.3d 934 (9th Cir. 2008) .........................................................................................7, 9, 14

*Williamson v. Apple, Inc.*,
    2012 WL 3835104 (N.D. Cal. Sept. 4, 2012) ........................................................................11

**Rules**

Rule 8 ................................................................................................................................................1, 7

Rule 9(b) ....................................................................................................................................1, 5, 7

**INTRODUCTION**

Plaintiffs' Opposition confirms that they again cannot state a claim based on any of the theories alleged in the Third Amended Complaint ("TAC") as to why Sanderson's advertising is false or misleading. Instead, Plaintiffs spend pages responding to arguments that they admit Sanderson does not make, again ignore Sanderson's repeated disclosures regarding its chicken-raising practices, and double down on tortured readings of Sanderson's advertising that no reasonable consumer could embrace. Indeed, for each of Plaintiffs' four theories—the three theories previously rejected by this Court and the newly unveiled one—Plaintiffs' claims run afoul of applicable case law and the Court's prior ruling.

**Plaintiffs' "unnatural residues" theory.** Plaintiffs allege in the TAC that "Sanderson Misleads Reasonable Consumers Who Expect . . . Chicken Products Do Not Contain Unnatural Residues," TAC § IV.A, but concede in their Opposition that they "*do not allege . . . that Sanderson products sold in California contained residues*." Opp. at 17 (emphasis added). Accordingly, for the same reasons the Court explained in its prior order, Plaintiffs do not adequately state a claim that Sanderson's advertisements are false and/or misleading when they suggest that Sanderson's Chicken Products are free of such residues. Moreover, Plaintiffs do not contest that their allegations based on supposedly mislabeled chicken feed at a single Sanderson plant would require several speculative leaps of logic (which the Court need not make at this stage), and their bare-bones references to unidentified and undisclosed testing do not remotely approach the standard in Rule 9(b) to allow Plaintiffs to proceed under such a theory.

**Plaintiffs' antibiotic-use theory.** Plaintiffs readily acknowledge that Sanderson discloses its use of antibiotics (and that the Court found as much in its prior order). Plaintiffs nonetheless attempt to save this theory by pivoting to challenge Sanderson's "100% Natural" slogan—either in the abstract or in a host of media (including billboards, radios advertisements, and magazines) that Plaintiffs do not identify in either the TAC or their Opposition. These efforts fail. For one, in order to satisfy both Rules 8(a) and 9(b), Plaintiffs must identify the specific advertisements they challenge and allege with particularity how and why those advertisements could mislead reasonable consumers. And California law is likewise clear (and this Court has already held) that any challenged advertisement or statement (such as a "100% Natural" slogan) must be considered within the context in which it appears, including the "images, representations, and language" that accompany that slogan. Plaintiffs thus cannot challenge Sanderson's

"100% Natural" slogan in the abstract, but must identify specific ads in which it is used. When the Opposition finally does engage with the few actual advertisements cited in the TAC, it fails to explain how reasonable consumers viewing the entire context of those advertisements and webpages could plausibly understand them to mean that Sanderson does not use antibiotics, particularly given Sanderson's prominent and repeated disclosures of such use.

**Plaintiffs' "raising" conditions theory.** The Opposition confirms that Plaintiffs have no plausible allegations to suggest that Sanderson misleads consumers as to the conditions in which its chickens are "raised." On one hand, as the Opposition acknowledges, Sanderson's website features a host of images depicting Sanderson's chickens in controlled, indoor houses. Thus, there can be no confusion of the "confinement" conditions within Sanderson's grow-out houses. And while Plaintiffs contend (without support) that Sanderson misleadingly suggests that it raises its chickens outdoors, neither the TAC nor the Opposition identifies a single Sanderson advertisement that represents, suggests, or depicts that Sanderson's chickens go outdoors. All Plaintiffs are left with are a variety of allegations that Plaintiffs admit relate only to Sanderson's "slaughtering" conditions—which this Court has already held have no plausible relation to how Sanderson "raises" its chickens.

**Plaintiffs' antibiotic resistant bacteria theory.** Finally, the Opposition does nothing to save Plaintiffs' newly unveiled theory regarding human antibiotic resistance. As an initial matter, Plaintiffs offer no valid justification for asserting this new theory at this stage. While Plaintiffs are correct that their prior complaints offered a few scattered references to studies related to antibiotic resistance, they do not (and cannot) claim to have ever fashioned those references in support of a claim or theory of relief. Instead, the Opposition only confirms that this new theory falls beyond the Court's limited leave to amend. On the merits, the Opposition still fails to identify actual advertising statements made by Sanderson that would plausibly mislead consumers as to the risk of antibiotic resistant bacteria (as opposed to antibiotic use or residues). In fact, the only evidence in the TAC is that consumers are *not* confused by Sanderson's advertising as it relates to this issue—a point that the Opposition fails to contest. Finally, Plaintiffs' half-hearted Opposition regarding Sanderson's statement that it is not aware of "credible" scientific research on this issue does nothing to change that such subjective opinion is not actionable under California law.

Plaintiffs have now filed four complaints in this matter: they voluntarily abandoned their allegations twice (once when Sanderson moved to dismiss the original Complaint, and once after discovery from USDA demonstrated that the allegations in the First Amended Complaint were unsupportable) and the Court properly dismissed their third attempt (the Second Amended Complaint). Plaintiffs' latest Opposition only confirms that they cannot make out false advertising claims against Sanderson on any of their old or new theories. The Court should finally put an end to this case.

### REPLY ARGUMENT

Plaintiffs cannot state a plausible claim under any of the four theories presented in the TAC. While Plaintiffs criticize Sanderson for "think[ing] that the factual allegations regarding Sanderson's process in the TAC are separate claims," Opp. at 15, Sanderson has merely addressed Plaintiffs' claims and theories as Plaintiffs presented them—demarcated in separate sub-sections and each identifying certain advertisements that purportedly support each theory (as Plaintiffs must do under Ninth Circuit law). In turn, Sanderson's Motion explained theory-by-theory and advertisement-by-advertisement why Plaintiffs have failed to state a plausible claim for relief. While Plaintiffs' Opposition distorts Sanderson's straightforward motion, the necessary review confirms that the Court should again dismiss Plaintiffs' claims under each theory.

**I.    Plaintiffs' Residue Theory Fails Because They Cannot—and Admittedly Do Not—Allege That Sanderson Chicken Products Sold in California Contain Residues.**

Plaintiffs readily concede that they "do not allege . . . that Sanderson products sold in California contained residues." Opp. at 17. The Court need not go any further to conclude that Plaintiffs cannot proceed under their "residue" theory. The crux of that theory is that "Sanderson misleads reasonable consumers who expect that '100% Natural' Chicken Products do not contain unnatural residues." TAC § IV.A (capitalization modified). Even assuming *arguendo* that Sanderson's advertising left reasonable consumers with that impression, for such impression to be false, Sanderson's Chicken Products—a term Plaintiffs themselves define as a variety of products that a consumer can purchase at a food store—*would* actually have to "contain" such residues. *See* ECF No. 105 at 4 ("How a reasonable consumer perceives Sanderson's advertising is only part of the equation: the SAC must contain facts that identify what is false or misleading about Sanderson's statements and why they are false."). But Plaintiffs have now expressly

disowned any allegation that Sanderson's Chicken Products contain such residues, at least in California, as would be required to make out a UCL or FAL claim.

Indeed, Plaintiffs' allegations now are even weaker than those the Court rejected in dismissing this theory in the SAC. In its last order, the Court held that Plaintiffs' "vague assertions that it is *possible* that there are unnatural residues in Sanderson's chicken at the point of sale" failed to state a claim because all that "remain[ed] [wa]s mere speculation as to whether or not there is any unnatural residue in any of Sanderson's chicken" products "sold in California." ECF No. 105 at 4 (emphasis in original). Here, Plaintiffs have disclaimed even the possibility that Sanderson's Chicken Products in California contain such residues, thereby making it impossible for Plaintiffs to state a claim that Sanderson has misled California consumers into believing its products are free of unnatural residues. *See, e.g.*, *Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009); *Hadley v. Kellogg Sales Co.*, 273 F. Supp. 3d 1052, 1081 (N.D. Cal. 2017) (dismissing UCL and FAL claims where "Defendant's statement that the product lacks high fructose corn syrup is not false and does not misrepresent the contents of the product"). Put simply, the fact that Sanderson's "chicken products [] are produced through a *process* in which pharmaceutical residues remain in the chickens through the various stages *of their lives*," Opp. at 17 (first emphasis in original), is irrelevant to assessing whether Sanderson's Chicken *Products* "contain unnatural residues," and thus whether Sanderson's advertising to the contrary is false or misleading. *See* ECF No. 105 at 4 ("Without any facts to show that Sanderson's chicken *does* contain such artificial elements, [] this assertion [] begs the question.") (emphasis in original).

Nor does Plaintiffs' Opposition cure the fatal flaws in their wholly speculative allegations regarding supposedly mislabeled chicken feed at a Sanderson mill in North Carolina. *See* TAC ¶ 62. In its Motion, Sanderson noted that Plaintiffs' allegations regarding the "mislabeled" feed could not plausibly lead to the inference that Sanderson's Chicken Products in California contained unnatural residues given Plaintiffs' complete failure to allege (i) that Sanderson actually fed the mislabeled feed to any chickens, (ii) that it did so during the recommended withdrawal period, (iii) that residues of the pharmaceuticals in that feed remained in the chickens after slaughter, (iv) that those chickens became Chicken Products sold in California (or anywhere else for that matter), or (v) that any such feed mislabeling is systemic in Sanderson's operations. Mot. at 8. Thus, far from "downplaying the importance of the withdrawal period

to prevent residues," Opp. at 18, Sanderson was merely pointing out the multiple leaps in logic that would be required for Plaintiffs' mislabeled feed allegation to support an actionable false advertising claim. *See Epstein v. Wash. Energy Co.*, 83 F.3d 1136, 1140 (9th Cir. 1996) ("unwarranted inferences are insufficient to defeat a motion to dismiss for failure to state a claim"). While Plaintiffs' Opposition makes the unsupported assertion that "Sanderson is using medicated feed during the withdrawal [period]," Opp. 18, no such allegation appears in the TAC, which refers only to such feed having been "sent" to a single facility. *See* TAC ¶ 62. The Court need not credit Plaintiffs' mislabeled feed allegations.

Finally, Plaintiffs still fail to explain why their reference to undisclosed testing at undisclosed processing plants from undisclosed times supports an actionable claim under this theory. As set forth above, Plaintiffs disclaim that such unidentified testing led to residues in actual Sanderson Chicken Products in California. And to the extent that Plaintiffs are attempting to rely upon the conclusory assertion that "Sanderson's Chicken Products have tested positive for unnatural residues" (which, again, is untethered to California), Plaintiffs plainly fail to satisfy Rule 9(b) by explaining, for instance, which Chicken Products, when or where the testing occurred, how many times the unidentified Chicken Products tested positive, and at what level (among other flaws). *See Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003) ("[T]he circumstances constituting the alleged fraud [must] be specific enough to give defendants notice of the particular misconduct . . . so that they can defend against the charge and not just deny that they have done anything wrong."). Moreover, as with their allegation of isolated feed mislabeling, Plaintiffs never provide a basis from which to reasonably infer that their vague testing allegations constitute anything more than isolated instances from which it would be unreasonable to make any extrapolation. *See* ECF No. 105 at 11 ("not reasonable to make any extrapolation from" isolated incidents given Sanderson's processing of billions of pounds of chicken per year). Once again, Plaintiffs' allegations "stand[] in stark contrast to the FAC, which contained several specific allegations that USDA testing detected quantif[ied] levels of drugs and other artificial contaminants in Sanderson chicken in 2015 and 2016." *Id.* at 5. Plaintiffs voluntarily abandoned those allegations (and one Plaintiff abandoned the case entirely) following discovery from USDA, and while Plaintiffs now complain for the first time that "the government has not released[] the complete data set from the USDA's National Residue Program with numerical results for every test of Sanderson's chicken," Opp. at 18 n.7, the fact that Plaintiffs have

not obtained certain data from USDA does not excuse their failure to state a claim.[1] Plaintiffs cannot continue with their residue-based theory hoping to find a factual basis to support it; having failed to adequately plead a basis to assert that any Sanderson Chicken Product contains residues after a year of litigation, Plaintiffs' residue claims should again be dismissed.

**II.    Plaintiffs' Opposition Confirms They Cannot State a Claim Based On Sanderson's Use of Antibiotics.**

Plaintiffs' Opposition fares no better in saving their theory that Sanderson misleads consumers as to its use of antibiotics in the first place. As Plaintiffs concede in their Opposition, the Court has already determined that Sanderson's website discloses its antibiotic use. *See* Opp. at 12. Nonetheless, Plaintiffs persist in attempting to challenge a new series of cherry-picked statements from Sanderson's website and other locations, as well as in contesting unspecified advertisements containing Sanderson's "100% Natural" slogan. But, as a matter of law, Plaintiffs cannot state a claim based on unspecified advertisements, and Plaintiffs' claims based on each of the advertisements that it actually does identify are foreclosed by Sanderson's disclosures, common sense, or both.

**A.    Plaintiffs Cannot Challenge Unspecified Advertisements or Sanderson's "100% Natural" Slogan In The Abstract.**

Recognizing that Sanderson readily discloses its antibiotic use in a variety of places, Plaintiffs' Opposition attempts to advance a series of hypotheticals involving consumers hearing "a radio spot on the way to the store," Opp. at 5, or seeing billboards or magazine advertisements, *id.* at 10, ostensibly including Sanderson's "100% Natural" slogan. But notably, neither the Opposition nor the TAC itself provides *any* information whatsoever on the contents of these radio spots, billboards, or magazine ads.[2] For instance, Plaintiffs make no attempt to allege or disclose the contents of this supposed advertising (including the featured images or spoken or printed words) or where and when they ran (including whether they even appeared in California). And Plaintiffs certainly do not explain what specifically about these advertisements was false or misleading. This alone forecloses a claim based on any of these media. *See,*

---

[1] Plaintiffs know from USDA discovery that the testing data provided by USDA did not show the presence of residues in Sanderson's chicken samples at *any* level—which is precisely why they abandoned (and have never re-asserted) their USDA testing allegations, and buried the reference to those tests in a footnote.

[2] The same goes for Sanderson's social media pages, which Plaintiffs cite in the TAC (without providing details), *see* TAC ¶ 58, but do not even bother to mention in their Opposition.

*e.g., Williams v. Gerber Prods. Co.*, 552 F.3d 934, 938 (9th Cir. 2008) ("It is true that 'the primary evidence in a false advertising case is the advertising itself.'"); *Varsity News Network, Inc. v. Carty Web Strategies, Inc.*, 2017 WL 7201873, at *9 (C.D. Cal. Aug. 30, 2017) ("Courts in this Circuit have rejected false advertising claims that, like [plaintiff's], lack factual specificity" about the actual advertisement at issue); *Moss v. Infinity Ins. Co.*, 197 F. Supp. 3d 1191, 1200 (N.D. Cal. 2016) ("Plaintiff has not met even the more liberal Rule 8 requirements.  Plaintiff fails to identify what advertisements and materials give rise to her false advertising claim and therefore does not give [defendant] adequate notice of its alleged violations."); *Joe Hand Promotions, Inc. v. Bragg*, 2016 WL 773223, at *5 (S.D. Cal. Feb. 29, 2016) ("[Plaintiff] fails to identify any specific advertisement, let alone when and where it was shown. [Plaintiff]'s allegations of false advertising are insufficient even under the notice pleading standard of Rule 8(a) and certainly lack the particularity required under Rule 9(b).").

In the same vein, Plaintiffs cannot simply challenge Sanderson's "100% Natural" slogan divorced from the specific advertisements and context in which it is deployed.  To begin, this approach again fails to identify specific advertisements, as the Ninth Circuit requires.  But more importantly, as this Court has recognized, "Sanderson's advertising includes images, representations, and language that go beyond" the USDA-approved "100% Natural" slogan.  ECF No. 48 at 9.  Those "images, representations, and language" provide necessary context that a court must consider in evaluating UCL or FAL claims.  *See* ECF No. 105 at 7 ("Under Ninth Circuit precedent, district courts may dismiss UCL and FAL claims where the alleged 'statements, in context, are not misleading,' or where '[a]ny ambiguity that [Plaintiffs] would read into any particular statement is dispelled by the promotion as a whole.'") (quoting *Freeman v. Time, Inc.*, 68 F.3d 285, 290 (9th Cir. 1995) (alterations in original).  Even Plaintiffs recognize the importance of context when they contend that the court in *Chapman v. Skype Inc.*, 220 Cal. App. 4th 217, 227 (2013), "found that the use of the term 'unlimited' *in the context of* Skype's representations concerning its calling plans" could be misleading.  Opp. at 7 (emphasis added).  And Plaintiffs themselves recognize that their challenge goes beyond the mere USDA-approved "100% Natural" slogan—as it must in order to avoid federal preemption.  *See* TAC ¶ 37 n.13 (acknowledging "Sanderson's advertising includes images, representations, and language that go beyond what is included on the USDA approved label") (quoting ECF No. 48 at 9).  Accordingly, to the extent that Plaintiffs wish to challenge Sanderson's

"100% Natural" slogan, it must be in the context of a specific, well-plead advertisement—distinct from any product label or package.[3]

### B. Plaintiffs' Challenge to Sanderson's Specific Advertisements Are Foreclosed by the Actual Context of the Challenged Statements or Are Otherwise Implausible.

Unable to make out a claim based on unspecified or abstract advertisements, Plaintiffs' Opposition cannot cure their claims under this theory with regard to any of the actual sources that they identify. Instead, a reasonable reading of the full context of each of the identified advertisements forecloses any "probability that a significant portion of the general consuming public . . . , acting reasonably in the circumstances, could be misled" into thinking that Sanderson does not use antibiotics. *Ebner v. Fresh, Inc.*, 838 F.3d 958, 965 (9th Cir. 2016); *Freeman*, 68 F.3d at 290.

**Sanderson's "100% Natural" webpage.** As Sanderson explains in its Motion, Sanderson's "100% Natural" webpage contains a graphic that describes exactly what Sanderson means by "100% Natural": "There's Only Chicken In Our Chicken. . . . No Additives Or Artificial Ingredients. . . . No Steroids, No Hormones, Non-GMO, No Added Salt, No Seaweed, No Broth, No Preservatives, No Added Water." Mot. at 10-11 & Ex. 1. Plaintiffs remarkably contend that "the infographic requires powers of analytical deduction that go beyond the reasonable consumer" because "the consumer would need to parse what Sanderson means by 'additive' and 'ingredient.'" Opp. at 19. Thus, if Plaintiffs are to be believed, a "reasonable consumer" who sees the word "natural" in connection with chicken products automatically believes a host of sweeping and specific things—*e.g.*, that no antibiotics were used in raising the chickens, that the chickens were raised outdoors, that the chicken-raising does not contribute to human antibiotic

---

[3] Although not relevant to Sanderson's Motion, Plaintiffs' Opposition leads with a four-and-a-half page argument that "100% Natural" is not puffery, during which they eventually recognize that: "[Sanderson] does not even attempt to argue that '100% Natural' is non-actionable 'puffery.'" Opp. at 7. Although Plaintiffs concede the key point, Sanderson confirms here that it is *not* arguing that "100% Natural" is puffery. To the contrary, "Natural" has a clear meaning under USDA poultry standards: "A product containing no artificial ingredient or added color [that] is only minimally processed." See https://www.fsis.usda.gov/wps/portal/fsis/topics/food-safety-education/get-answers/food-safety-fact-sheets/food-labeling/meat-and-poultry-labeling-terms/meat-and-poultry-labeling-terms. Sanderson uses that term on both its product labels and in its advertising because its Chicken Products meet that standard. Sanderson's argument is *not* that "100% Natural" is puffery, but rather that to the extent Plaintiffs challenge that term in Sanderson's advertising, the Court must identify the specific advertisements and account for the context in which that term is used.

1  resistance—but has no idea what the words "additive" or "ingredient" mean (even when followed by a list
2  eight things "not" used by Sanderson that makes no mention of antibiotics). The Court need not credit
3  such a contorted conception of reasonable consumers. *See Ebner*, 838 F.3d at 965 (reasonable consumer
4  standard requires "more than a mere possibility that [defendant's advertisement] might conceivably be
5  misunderstood by some few consumers viewing it in an unreasonable manner"); *see also Sugawara v.*
6  *Pepsico, Inc.*, 2009 WL 1439115, at *5 (E.D. Cal. May 21, 2009) (dismissing UCL and FAL claims where
7  it "would require this Court to ignore all concepts of personal responsibility and common sense").

8  Moreover, while the Court need not look beyond the "100% Natural" webpage itself to dispense
9  with Plaintiffs' challenge to that page, Plaintiffs concede that a large link at the bottom of the page invites
10 viewers to "Learn More About What Makes [Sanderson's] Chicken The Natural Choice," and leads
11 viewers to the very FAQ webpage that the Court "earlier determined . . . is not misleading because it
12 provides statements regarding Sanderson's antibiotic use." Opp. at 12.

**Learn More About What Makes Our Chicken The Natural Choice**

[ Learn More > ]

18 Although Plaintiffs argue that the Court should not look beyond the four corners of the specific webpage
19 at issue, there is no basis in California law to limit the Court's review in the manner that Plaintiffs suggest.
20 Instead, the law distinguishes between product labels with misleading claims that are clarified or corrected
21 in the fine print of the ingredient list, *see, e.g.*, *Williams*, 552 F.3d at 939; *Bohac v. Gen. Mills, Inc.*, 2014
22 WL 1266848, at *8 (N.D. Cal. Mar. 26, 2014), and websites, packaging, or other promotional sources that
23 conspicuously include information that would inform a reasonable consumer's understanding. *See, e.g.*,
24 *Freeman*, 68 F.3d at 290; *Castagnola v. Hewlett-Packard Co.*, 2012 WL 2159385, at *9 (N.D. Cal. June
25 13, 2012) ("The Court . . . cannot look at the statements on the webpage in isolation."). Here, the
26 challenged webpage contains a conspicuous link to "Learn More" about the very topic of supposed
27 concern—a link which Plaintiffs concede (and the Court has agreed) discloses the supposedly hidden
28

practice.  Thus, to the extent the "100% Natural" page itself leaves the impression that Sanderson does not use antibiotics, the clearly linked FAQ page dispels such notion as a matter of law.

**Sanderson's "How We Grow Our Chicken" video.**  Plaintiffs concede that the "How We Grow Our Chicken" video discloses Sanderson's use of antibiotics.  Opp. at 13.  That should be the beginning and end of any challenge based on this video.  Instead, Plaintiffs now contend that the video "obfuscates" the "routine" use of antibiotics or the manner in which Sanderson applies them.  *Id.*  But Plaintiffs are impermissibly moving the goalposts.  All along, Plaintiffs' theory in this case has been that Sanderson misleads consumers into believing that Sanderson does not use antibiotics <u>at all</u>.  Now, confronted with unequivocal evidence that Sanderson readily discloses its use of antibiotics, Plaintiffs attempt to change the standard.  Not only is that impermissible at this stage, but Plaintiffs offer no allegation that reasonable consumers parse the term "natural" in this manner, *i.e.*, to understand that consumers have a particularized view of the manner or regularity in which antibiotics are used.  Instead, Plaintiffs allege only that "57% of consumers think that no antibiotics or other drugs were used"—period—something that is clearly dispelled by any reasonable viewing of Sanderson's video.  *See* TAC ¶ 49.  In any event, the video unequivocally states (and shows) that Sanderson applies injections and vaccines as a matter of course— to each and every egg and chicken.  There is simply no way that a reasonable consumer could view the video and come away with an impression that Sanderson does not use antibiotics at all or even routinely.  *See Ebner*, 838 F.3d at 965.  Sanderson's failure to craft its advertisements in precisely the manner that Plaintiffs might prefer does not mean that those advertisements mislead reasonable consumers.

**"Bob and Dale" Commercial.**  Finally, Plaintiffs do not even contest that the Court already found that "Plaintiffs' claims based on the 'Bob' and 'Dale' commercials ultimately fail," including with regard to Plaintiffs' argument that those commercials were "misleading because they make assertions without clarifying Sanderson's use of antibiotics."  ECF No. 105 at 9.  Instead, Plaintiffs contend that the "Bob and Dale" commercials do "not correct the false '100% Natural' assertions that pervade Sanderson's advertising." Opp. at 14.  This is both conclusory and a non-sequitur.  Plaintiffs do not contest—and, indeed, tacitly acknowledge—that Sanderson's statement that "all chickens must be *cleared* of antibiotics before they leave the farm" is wholly inconsistent with the notion that Sanderson does not use antibiotics at all, and could not plausibly leave a reasonable consumer with that impression.  Moreover, whether such

statement is at odds with other, unidentified Sanderson advertising (as Plaintiffs now argue) is irrelevant. Once again, Plaintiffs must challenge specific Sanderson advertisements, *see supra* § II.A, and where Plaintiffs' reading of this specific "Bob and Dale" commercial would defy common sense, the Court must dismiss it as a matter of law. *See Stuart v. Cadbury Adams USA, LLC*, 458 F. App'x 689, 690 (9th Cir. 2011); *see also Carrea v. Dreyer's Grand Ice Cream, Inc.*, 475 F. App'x 113, 115 (9th Cir. 2012) (affirming dismissal of UCL and FAL claims because "it strains credulity to claim that a reasonable consumer would be misled"); *Williamson v. Apple, Inc.*, 2012 WL 3835104, at *1, 6 (N.D. Cal. Sept. 4, 2012) (dismissing UCL claim where plaintiff's claim required "a suspension of logic").[4]

### III. Plaintiffs Have Not Pled Plausible Claims Based on Sanderson's Chicken-Raising Conditions.

Plaintiffs' Opposition also fails to overcome the numerous reasons why Plaintiffs have not stated a plausible claim based on Sanderson's representations of how it raises its chickens.

*First*, Plaintiffs fail to address, and therefore concede, that the fictional cartoons, like those depicting chickens sipping lemonade and playing volleyball, contain no misstatements, nor do they contest that those statements are not actionable. *See* Mot. at 14.

*Second*, Plaintiffs acknowledge the multiple scenes in Sanderson's "How We Grow Our Chicken" video depicting and describing the controlled, indoor facilities in which Sanderson raises its chicken. *See* Opp. at 14 n.4 (citing Mot. at 17) (showing four of numerous scenes in the video). That video—which Plaintiffs themselves rely upon to support certain of their other theories—appears on the very "Animal Welfare" webpage containing Sanderson's representation that it "believe[s] in raising [its] chickens humanely to ensure their safety, nutrition, and overall health," and forecloses any plausible claim that such page misleads reasonable consumers as to the housing conditions in which it raises its chickens.

---

[4] Although not specifically tied to this theory, Plaintiffs' references to Sanderson's homepage in their Opposition, Opp. at 6, 10, fare no better, as the homepage repeats the message that "all chickens must be *clear* of antibiotics before they leave the farm." *See* Sanderson Homepage, https://sandersonfarms.com (emphasis added). Again, this logically forecloses the notion that antibiotics are not used at all. Further, the homepage directs viewers to a number of links, which likewise confirm Sanderson's antibiotic use. *See, e.g.*, Sanderson's "Responsibly Raised" page, https://sandersonfarms.com/our-chickens/responsibly-raised ("FDA approved antibiotics help keep chickens in tip top shape while being raised, and all chickens are clear of antibiotics before they leave the farm.").

*Third*, Plaintiffs' reference to supposed consumer expectations that birds go outdoors (based on generic surveys that do not assess Sanderson's actual advertising) is irrelevant insofar as Plaintiffs still cannot point to a single advertisement, statement, photograph, or video in which Sanderson suggests to consumers that its chickens *do* go outdoors. Once again, every image in the "How We Grow Our Chicken" video depicts the birds *inside* controlled houses (with the exception of when Sanderson shows chickens on trucks driving to the processing facility). And for the reasons set forth above, Plaintiffs cannot simply rely on Sanderson's "100% Natural" slogan (divorced from the images, representations, and language with which it appears) to argue that such slogan alone suggests that the birds go outdoors. *See supra* § II.A. In any event, Plaintiffs' suggestion that the mere term "natural" implies birds are raised outdoors is a reed too thin, and ignores the Court's well-taken observation at the last hearing that "'100% natural' and how the chickens are treated are a bit ships that pass in the night." *See* 8/30/18 Hr'g Tr. at 11:8-10.

*Finally*, Plaintiffs cannot stretch Sanderson's statement that it "believe[s] in *raising* our chickens humanely" to apply to Sanderson's *slaughtering* or *euthanizing* practices. Plaintiffs ignore that this Court has squarely rejected that argument already. *See* ECF No. 105 at 11. The Court's prior (correct) conclusion is not changed by a New Jersey district court applying New Jersey law to a "Humanely Raised" labeling claim. Indeed, a different district judge in that same case came to the exact opposite conclusion on a different iteration of the complaint. *See Hemy v. Perdue Farms, Inc.*, 2011 WL 6002463, at *15 (D.N.J. Nov. 30, 2011) ("Perdue is correct in that these sources demonstrate that, in many contexts, the commonly understood definition of raising does not include slaughter.").

For these reasons, Plaintiffs cannot state a claim that Sanderson has misled consumers regarding the conditions in which it raises its birds.[5]

### IV. Plaintiffs' Antibiotic Resistance Theory Remains Procedurally Improper and Substantively Deficient.

#### A. The Brand New Antibiotic Resistance Theory Is Not Curing Prior Pleading Defects.

Plaintiffs' Opposition fails to justify their attempt to add a brand new false advertising theory almost sixteen months after initiating this case and near the conclusion of fact discovery. Plaintiffs

---

[5] It is no answer that "Sanderson does not deny the inhumane treatment." Opp. at 22. As Plaintiffs know, Sanderson must take their fact allegations as true in this posture. For the avoidance of doubt, Sanderson certainly denies these allegations and that the isolated incidents alleged by Plaintiffs are systemic.

concede that the Court's leave to amend was limited to addressing deficiencies addressed in the Court's order dismissing the SAC. *See* Opp. at 23; *see also* ECF No. 105 at 12 (granting Plaintiffs leave to "cure the defects outlined above"). Plaintiffs nonetheless argue that they should be entitled to add this theory because (i) their prior complaints contained some isolated references to antibiotic resistance, (ii) they are merely "better connect[ing] their factual allegations to the claim of false and misleading advertising," and (iii) they are not adding a new claim. None of these arguments pass muster.

*First*, the fact that Plaintiffs included gratuitous references to the threat of using antibiotics on the spread of human antibiotic resistance in their First and Second Amended Complaints is irrelevant. Those allegations were untethered to any theory in either Complaint as to why Sanderson's advertising was false and misleading. Instead, each of those Complaints set forth three theories as to why Sanderson's advertising was actionable, namely that Sanderson misled consumers with regard to: (i) "unnatural residues" in its Chicken Products; (ii) its use of antibiotics; and (iii) its chicken-raising conditions. *See* FAC ¶ 7, SAC ¶ 5. There can be no dispute that, notwithstanding limited (and irrelevant) references to research regarding antibiotic resistance in the prior Complaints, Plaintiffs did not remotely advance any theory that Sanderson's advertising was false or misleading for reasons related to antibiotic resistance. (And that is perhaps unsurprising: their freshly minted antibiotic-resistance theory—which presumes that Sanderson uses antibiotics in raising its chickens—is entirely inconsistent with their theory that Sanderson misled consumers into believing it does *not* use antibiotics at all.)

*Second*, in adding this theory, Plaintiffs have gone beyond merely "cur[ing] the defects" in the SAC. The primary defect identified in the Court's prior order was Plaintiffs' failure to allege that Sanderson's conduct was contrary to the representations in its advertising. *See, e.g.*, ECF No. 105 at 4 ("Plaintiffs do not adequately plead facts to support their claims based on the theory that Sanderson's products contain drugs or other artificial substances . . . ."); *id.* at 9 ("The defect in the SAC's claims regarding the raising and treatment of chickens" is that "the SAC contains no allegations to support a reasonable inference that Sanderson raises its chickens in 'unnatural' conditions."). To cure that defect, Plaintiffs would have had to come forward alleging facts in support of their prior theories, not to invent new theories upon which to allege false advertising. In this regard, this case is no different than *Maxwell v. McLane Pac., Inc.*, 2017 WL 8186758, at *9 (C.D. Cal. Oct. 19, 2017), where the plaintiff had

previously alleged that his employer defendant violated California labor law in numerous respects. After being given limited leave to amend to support his prior theories, the plaintiff attempted to add a new claim based on newly alleged misconduct. The court squarely disallowed this, reasoning that it had "granted leave to amend only to allege additional facts to support claims already asserted." *Id.* at *9-10. And Plaintiffs' gambit is the exact opposite of *Chaquico v. Freiberg*, 2017 WL 4805578, at *8 (N.D. Cal. Oct. 24, 2017), where the court allowed a new factual allegation because it "d[id] *not* add a new claim *or theory of liability*, only an additional basis for jurisdiction" for a claim and theory already asserted. *Id.* (emphasis added).

*Finally*, the fact that Plaintiffs do not add a new cause of action is irrelevant. Whether as a new cause of action or a new theory within their pre-existing UCL and FAL causes of action, this new theory would expand the case, and would prejudice Sanderson by (among other things) opening a new realm of discovery at this late juncture. The Court should reject Plaintiffs' newfound theory for this reason alone.

### B.   Plaintiffs Have Not Stated a Plausible Claim Under Their New Theory.

Even if the Court were to consider Plaintiffs' new antibiotic resistance theory, their Opposition makes clear that they cannot state a plausible claim under this theory.

At the outset, Plaintiffs still fail to identify anything in Sanderson's advertisements that could plausibly convey to reasonable consumers *anything* about antibiotic-resistant bacteria. Plaintiffs double down on the notion that statements like "[n]o antibiotics to worry about here" or "by federal law, all chickens must be clear of antibiotics before they leave the farm" give consumers some sort of misimpression about antibiotic resistance as it relates to Sanderson chicken. But those ads do nothing of the sort, instead referring—both in context and in actual language—to Sanderson's chicken being free of "antibiotics." Sanderson simply makes no statement—affirmative, negative, or otherwise—about human antibiotic resistance, and the TAC does not allege any plausible facts (as opposed to unsupported assertions) in support of the notion that reasonable consumers understand any of Sanderson's advertising to suggest a lack of antibiotic resistant bacteria on Sanderson's products. *See Ebner*, 838 F.3d at 965.

Nor do Plaintiffs point to any well-plead allegation of consumer confusion over the identified advertisements when it comes to antibiotic resistance. This, is of course, a necessary element of any false advertising claim like Plaintiffs assert. *See Williams*, 552 F.3d at 938; *U.S. ex rel. Cafasso v. Gen.*

*Dynamics C4 Sys., Inc.*, 637 F.3d 1047, 1055 (9th Cir. 2011). Rather, the most that Plaintiffs have pled is that consumers have a generalized concern "that feeding antibiotics or other drugs to animals leads to antibiotic resistance bacteria." TAC ¶ 69. But that says nothing of whether consumers are (or plausibly could be) misled by Sanderson's advertising. To the contrary, the only allegations in the TAC (at ¶¶ 82-83) show the opposite of consumer confusion—something Sanderson pointed out in its Motion but for which Plaintiffs offer no response. *Cf.* ECF No. 105 at 8-9 (dismissing Plaintiffs' antibiotic-use theory in SAC where "none of the consumers highlighted in the complaint claim to have been deceived into buying Sanderson's chicken products because of its allegedly misleading advertising" and "the consumers' statements make clear that they understood").

Finally, Plaintiffs' Opposition fails to explain why Sanderson's statement that it is not aware of "credible" scientific research linking antibiotic use in raising chickens to human antibiotic resistance is anything more than a non-actionable statement of opinion. Plaintiffs assert that Sanderson's statement "leads the consumer to believe that there is *no* scientific evidence," Opp. at 21 (emphasis added), but that assertion ignores the critical qualifier—"credible"—which makes the statement non-actionable under California law. *See* Mot. at 23 (citing cases holding that "vague and highly subjective" qualifiers such as "meaningfully," "good," "superior," "simple," or "easy" are not actionable under the UCL or FAL). Rather than attempting to genuinely distinguish Sanderson's cases, Plaintiffs bafflingly assert that they "are not on point" because "'100% Natural' has a concrete meaning for the reasonable consumer, and . . . is not 'puffery.'" Opp. at 21-22. But the key phrase at issue is "credible," not "100% Natural," which is not even referenced on the subject webpage. *See* Mot. Ex. 2 (Sanderson's Policy on Animal Welfare and Antibiotic Use). Because the term "credible" turns on Sanderson's own subjective views regarding the research at issue, any claim based on that opinion is non-actionable and must be dismissed.

## **CONCLUSION**

For the foregoing reasons and those in Sanderson's Motion, Sanderson respectfully requests that the Court dismiss Plaintiffs' Third Amended Complaint with prejudice.

| | |
|---|---|
| 1    DATED: November 6, 2018 | Respectfully submitted, |
| 2 | */s/ Mark McKane* |
|   | Mark McKane |
| 3 | |
| 4 | Mark McKane, P.C. (SBN 230552) |
|   | mark.mckane@kirkland.com |
| 5 | KIRKLAND & ELLIS LLP |
|   | 555 California Street |
| 6 | San Francisco, California  94104 |
|   | Telephone: (415) 439-1400 |
| 7 | Facsimile: (415) 439-1500 |

DATED: November 6, 2018

Respectfully submitted,

*/s/ Mark McKane*
Mark McKane

Mark McKane, P.C. (SBN 230552)
mark.mckane@kirkland.com
KIRKLAND & ELLIS LLP
555 California Street
San Francisco, California  94104
Telephone: (415) 439-1400
Facsimile: (415) 439-1500

Gregg F. LoCascio, P.C. (admitted *pro hac vice*)
gregg.locascio@kirkland.com
Michael Glick (admitted *pro hac vice*)
michael.glick@kirkland.com
Terence J. McCarrick (admitted *pro hac vice*)
terence.mccarrick@kirkland.com
KIRKLAND & ELLIS LLP
655 Fifteenth Street, N.W.
Washington, D.C.  20005
Telephone: (202) 879-5000
Facsimile: (202) 879-5200

*Counsel for Defendant
Sanderson Farms, Inc.*

SANDERSON FARMS, INC.'S REPLY IN SUPPORT OF MOT. TO DISMISS THE THIRD AMENDED COMPLAINT     16     CASE NO. 3:17-CV-03592 (RS)