UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

FRIENDS OF THE EARTH, et al.,

    Plaintiffs,

    v.

SANDERSON FARMS, INC.,

    Defendant.

Case No. 17-cv-03592-RS

**ORDER DENYING MOTION TO DISMISS**

## I. INTRODUCTION

Friends of the Earth ("FoE") and Center for Food Safety ("CFS") bring suit against Sanderson Farms, Inc. over advertising and marketing materials that Plaintiffs aver are designed to, and do, mislead consumers about the nature of Sanderson's chicken products and farming practices. Specifically, Plaintiffs challenge Sanderson's advertising of its chicken products as "100% Natural." Once again, Sanderson moves to dismiss, contending that Plaintiffs' amended factual allegations in their Third Amended Complaint ("TAC") are insufficient to state claims for relief. For the reasons explained below, Sanderson's motion is denied.

## II. BACKGROUND[1]

The full facts of this case were set forth in the prior order denying Defendant's motion to dismiss the First Amended Complaint ("FAC") and need not be repeated here. On October 2,

---

[1] The factual background is based on the averments in the TAC, which must be taken as true for purposes of this motion.

2018, Plaintiffs filed the TAC, a substantially edited version of the Second Amended Complaint ("SAC"), articulating with greater clarity how their factual allegations demonstrate why Sanderson's "100% Natural" advertising is false and misleading. Plaintiffs continue to advance claims under California's Unfair Competition Law ("UCL") and False Advertising Law ("FAL"), California Business and Professional Code Sections 17200, *et seq.* and 17500, *et seq.*, respectively. Plaintiffs aver Sanderson's "100% Natural" advertising scheme falsely and misleadingly suggests that its process and resulting product meet reasonable consumer expectations for "natural" poultry, including: (1) no pharmaceutical residues remain in the product; (2) pharmaceuticals, including antibiotics, are not routinely administered to the chickens during the majority of their lives; (3) Sanderson is not contributing to the spread of antibiotic-resistant bacteria; and (4) Sanderson chickens were raised in natural conditions, such as going outdoors.

### III.  LEGAL STANDARD

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). While "detailed factual allegations" are not required, a complaint must have sufficient factual allegations to state a claim that is "plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. v. Twombly*, 550 U.S. 544, 555, 570 (2007)). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). This standard asks for "more than a sheer possibility that a defendant has acted unlawfully." *Id.* The determination is a context-specific task requiring the court "to draw on its judicial experience and common sense." *Id.* at 679.

Additionally, fraud claims are subject to a higher standard and the circumstances constituting fraud must be pleaded with particularity. Fed. R. Civ. P. 9(b). The same is true of state law claims that are grounded in fraud. *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1103 (9th Cir. 2003). "To satisfy Rule 9(b), a pleading must identify the who, what, when, where, and how of the misconduct charged, as well as what is false or misleading about [the purportedly

fraudulent] statement, and why it is false." *Cafasso, U.S. ex rel. v. Gen. Dynamics C4 Sys., Inc.*, 637 F.3d 1047, 1055 (9th Cir. 2011) (internal quotation marks omitted). "[T]he circumstances constituting the alleged fraud [must] be specific enough to give defendants notice of the particular misconduct . . . so that they can defend against the charge and not just deny that they have done anything wrong." *Vess*, 317 F.3d at 1106 (internal quotation marks omitted). Allegedly fraudulent conduct must be judged against the "reasonable consumer" standard under the UCL or FAL. *See Freeman v. Time, Inc.*, 68 F.3d 285, 289 (9th Cir. 1995); *Lavie v. Proctor & Gamble Co.*, 105 Cal. App. 4th 496, 512 (2003).

A motion to dismiss a complaint under Rule 12(b)(6) of the Federal Rules of Civil Procedure tests the legal sufficiency of the claims alleged in the complaint. *See Conservation Force v. Salazar*, 646 F.3d 1240, 1241-42 (9th Cir. 2011). Dismissal under Rule 12(b)(6) may be based on either the "lack of a cognizable legal theory" or on "the absence of sufficient facts alleged under a cognizable legal theory." *Id.* at 1242 (internal quotation marks omitted). When an entire complaint is grounded in fraud and its allegations fail to satisfy the heightened pleading requirements of Rule 9(b), a district court may dismiss the complaint. *Vess*, 317 F.3d at 1107. Dismissals under Rule 9(b) and Rule 12(b)(6) are treated in the same manner. *Id.* When evaluating such a motion, the court must accept all material allegations in the complaint as true and construe them in the light most favorable to the non-moving party. *In re Quality Sys., Inc. Sec. Litig.*, 865 F.3d 1130, 1140 (9th Cir. 2017). "[C]onclusory allegations of law and unwarranted inferences," however, "are insufficient to defeat a motion to dismiss for failure to state a claim." *Caviness v. Horizon Cmty. Learning Ctr., Inc.*, 590 F.3d 806, 812 (9th Cir. 2010).

## IV.  DISCUSSION

As a threshold matter, Defendant is correct that Plaintiffs have asserted some allegations which, left on their own, would be insufficient to state a claim for relief. Plaintiffs, however, have also asserted allegations which satisfy the pleading requirements. At the pleading stage, the Court need not parse the complaint on an allegation-by-allegation basis to determine if each averment is viable because, for each claim that survives, Plaintiffs have alleged at least one fact to establish the

1    claim. *See Ames v. Lindquist*, No. C-16-5090-BHS, 2017 WL 6311491, at *1 (W.D. Wash. Dec.

2    11, 2017), *appeal docketed*, No. 17-36040 & No. 18-35013 (9th Cir. Jan. 4, 2018). Theories and

3    facts under each claim that are nonviable will be disposed of as the matter proceeds. *See id.*;

4    *Williams v. Scribd, Inc.*, No. 09-cv-1836-LAB (WMc), 2010 WL 10090006, at *11 (S.D. Cal.

5    June 23, 2010) ("[Defendant's] motion to dismiss is largely denied only because it is too early to

6    raise those arguments. . . . [Defendant] seems to have all of its arguments for summary judgment

7    already teed up."). As discussed below, Plaintiffs have sufficiently pled claims for relief under

8    both the UCL and FAL.

9    Plaintiffs contend that Sanderson's advertisements and statements describe "natural" in a

10   way that confuses consumers as to whether the chicken product was raised *without* antibiotics

11   versus raised *with* antibiotics and subsequently *cleared* of it prior to sale. In Plaintiffs' view, this

12   implies to the potential purchaser that Sanderson does *not* use antibiotics in the raising of the

13   chicken, thereby taking advantage of consumer expectations that a "natural" food product has

14   *never* been exposed to antibiotics and the attendant consumer willingness to spend more for such

15   products. (TAC ¶¶ 49-51.) Unlike the SAC, the TAC sufficiently pleads these allegations.

16   Under the reasonable consumer standard, a plaintiff must show that "members of the

17   public are likely to be deceived." *Ebner v. Fresch, Inc.*, 838 F.3d 958, 965 (9th Cir. 2016)

18   (internal quotation marks omitted). This requires "more than a mere possibility that [defendant's]

19   advertisement] 'might conceivably be misunderstood by some few consumers viewing it in an

20   unreasonable manner.'" *Id.* (quoting *Lavie*, 105 Cal. App. 4th at 508). Rather, the reasonable

21   consumer standard requires a probability "that a significant portion of the general consuming

22   public or of targeted consumers, acting reasonably in the circumstances, could be misled." *Id.*

23   (quoting *Lavie*, 105 Cal. App. 4th at 508). Whether a business practice is deceptive is generally a

24   question of fact not amenable to determination on a motion to dismiss. *Williams v. Gerber Prods.*

25   *Co.*, 552 F.3d 934, 938-39 (9th Cir. 2008). In certain situations, however, a court may assess, as a

26   matter of law, the plausibility of alleged violations of the UCL and FAL. *See, e.g.*, *Werbel v.*

27   *Pepsico, Inc.*, No. 09-cv-04456 SBA, 2010 WL 2673860, at *3 (N.D. Cal. July 2, 2010) (plaintiff

28

United States District Court
Northern District of California

CASE NO. 17-cv-03592-RS

4

failed to show that a reasonable consumer would likely be deceived into believing that cereal named "Crunch Berries" derived nutritional value from fruit).

Sanderson asserts Plaintiffs cannot challenge its "100% Natural" slogan in the abstract, without considering the full context of an advertisement in which the slogan is used. Under Ninth Circuit precedent, district courts may dismiss UCL and FAL claims where the alleged "statements, in context, are not misleading," or where "[a]ny ambiguity that [Plaintiffs] would read into any particular statement is dispelled by the promotion as a whole." *Freeman*, 68 F.3d at 290; *see also Carrea v. Dreyer's Grand Ice Cream, Inc.*, 475 F. App'x 113, 115 (9th Cir. 2012) (affirming the dismissal of UCL and FAL claims where "no reasonable consumer is likely to think that 'Original Vanilla' refers to a natural ingredient when that term is adjacent to the phrase, 'Artificially Flavored.'"). Defendant contends that three advertisements' full context dispel any potential confusion that could arise from the slogan "100% Natural": (1) the infographic on Sanderson's "100% Natural" webpage, (2) Sanderson's "How We Grow Our Chicken" video, and (3) Sanderson's "Bob and Dale" commercials.[2]

Sanderson argues its infographic on its "100% Natural" webpage contains only true statements: it shows what ingredients are not added to the chicken and says nothing about antibiotic use or nonuse. Defendant appears to make an *expressio unius* argument: that because antibiotics are *not* included in the list of excluded artificial ingredients, a reasonable consumer could not conclude that antibiotics are also excluded. As Plaintiffs correctly point out, however, the fact that the infographic contains true statements regarding the nonuse of hormones, steroids, seaweed, etc., does not provide sufficient context for a reasonable consumer to conclude that this chicken product, which is advertised as "100% Natural," has not been treated with antibiotics as part of the production process. A reasonable consumer, in light of Sanderson's "100% Natural" slogan, could plausibly believe that the infographic's "no additives or artificial ingredients"

---

[2] Defendant does not advance disclaimer arguments for other challenged advertisements, including the television commercial "Employees," Sanderson's newsletter subscription webpage, or Sanderson's monthly 100% Natural Newsletter.

statement means no synthetic pharmaceuticals.  Sanderson does not include a disclosure on the webpage stating unequivocally that antibiotics are used in its production process, and the infographic's silence on the issue is not a disclosure.  Sanderson is allegedly making an affirmative representation ("100% Natural," "no additives or artificial ingredients") that is contrary to the undisclosed characteristic (chicken raised with antibiotics before point of sale).  *Cf. Tait v. BSH Home Appliances Corp.*, No. 10-00711-DOC (ANx), 2011 WL 3941387, at *2 (C.D. Cal. Aug. 31, 2011) (denying a motion to dismiss UCL and FAL claims in a product liability case where plaintiffs claimed defendant's representations—that its washing machine was "Xxtra Sanitary" and "high efficiency"—constituted fraud by omission because the machines accumulated mold and required extra cleaning); *see also Hodsdon v. Mars*, 162 F. Supp. 3d 1016, 1023 (N.D. Cal. 2016) ("[A] plaintiff may state a claim under the FAL if the defendant actually made a statement, but omitted information that undercuts the veracity of the statement."), *aff'd*, 891 F.3d 857, 868 (9th Cir. 2018).  Sanderson's silence on antibiotic use in the infographic undercuts the veracity of "100% Natural."[3]  A reasonable consumer could plausibly think that Sanderson's "no additives or artificial ingredients" statement, in conjunction with the "100% Natural" slogan, means no synthetic pharmaceuticals were used.

Sanderson doubles down on the "100% Natural" webpage by pointing out there is a link on the webpage that takes consumers to its FAQ webpage, which the prior order dismissing the SAC recognized disclosed Sanderson's use of antibiotics.  In so doing, Sanderson attempts to bootstrap case support for the need to assess the full webpage into the proposition that an *entire website* must be considered in determining if a statement is misleading.  Review, to the contrary, is limited to the four corners of a specific webpage at issue.  No authority suggests a reasonable consumer is

---

[3] Consideration of the entire webpage as Sanderson provided in Exhibit 1 of the McKane Declaration does not help Sanderson.  Defendant does not dispute that it puts antibiotics in its chicken feed.  And yet, Sanderson states that there are "no unpronounceable ingredients" in its chicken and that its feed is "corn and soy-based."  (McKane Decl., Ex. 1 at 6, 8.)  This not only arguably implies to a reasonable consumer that there are no antibiotics involved in Sanderson's chicken production, but that the names of the antibiotics Sanderson uses in its feed would not be difficult for a reasonable consumer to pronounce—a stretched argument at best.

expected to search a company's entire website (or certainly all of a company's statements across all forms of advertisements) to find all possible disclaimers. This is not akin to disclaimers being adjacent to the challenged statements as in *Freeman*, 68 F.3d at 290, or review of a webpage as in *Castagnola v. Hewlett-Packard Co.*, No. 11-cv-05772-JSW, 2012 WL 2159385, at *9 (N.D. Cal. June 13, 2012). Although the reasonable consumer standard demands that a plaintiff must show "more than a mere possibility" that a challenged advertisement might conceivably mislead a few consumers, *Ebner*, 838 F.3d at 965, it does not ask they be private investigators as Defendant appears to suggest. Plaintiffs have sufficiently averred a significant portion of the general consuming public acting reasonably could be misled by the "100% Natural" webpage. *Id.*

Sanderson's attacks on Plaintiffs' claims based on the "Bob and Dale" commercials focus on the prior order dismissing the SAC and the commercials' use of the term "clear." According to Defendant, the prior order rejected Plaintiffs' arguments based on these commercials and they should not be permitted to proceed here as part of the TAC. Defendant also contends that the phrase "all chickens must be *cleared* of antibiotics before they leave the farm" could not plausibly leave a reasonable consumer with the impression that Sanderson does not use antibiotics, because "if the process was devoid of antibiotics, surely there would be nothing to 'clear' before the birds left the farm." (Mot. at 13.) Both arguments lack merit.

The prior order dismissing Plaintiffs' SAC rejected their claims based on the "Bob and Dale" commercials because the SAC provided the particulars of how the advertisements were misleading without averring facts showing what was false or misleading about the advertisements and why. Plaintiffs' TAC addressed that inadequacy. Plaintiffs sufficiently allege: (1) a reasonable consumer expects a product labeled as "natural" to have *never* come into contact with antibiotics during its production, not simply be without antibiotics at point of sale, and such consumer is willing to pay more for such a product; (2) Sanderson administers antibiotics in its chicken production and what those antibiotics are; and (3) a reasonable consumer is likely to be misled by Sanderson's advertisements, including the "Bob and Dale" commercials.

Sanderson's focus on a close reading of the advertisement's words, namely the verb

"clear" is misplaced.  A lawyer may well catch this turn of phrase, but the reasonable consumer standard does not demand that consumers interpret advertisements the same way a judge interprets statutes.  *See Kellman v. Whole Foods Mkt., Inc.*, 313 F. Supp. 3d 1031, 1050 (N.D. Cal. 2018) ("The defendants cite no cases that support their argument that adding the words '[i]ndependent lab results show this [product] is' before the word 'hypoallergenic' somehow renders their representation less misleading if . . . the product is in fact not hypoallergenic.").  A reasonable consumer is not expected to make the negative inference Defendant propounds any more than an ingredient list on the back of a box can dispel misleading statements made on the front.  *See Williams*, 552 F.3d at 939.  Defendant's "Bob and Dale" commercial is not focused on the fact that Sanderson uses antibiotics and then clears its chickens of the drugs before sale, nor are its statements confined to literally true statements regarding federal law requiring all chicken to be clear of antibiotics before point of sale.  The commercial is focused on Sanderson's *competitors*, and *their* use of phrases "no antibiotics ever" or "raised without antibiotics" as essentially being redundant in light of federal law requiring no chicken products contain antibiotics at point of sale.

By criticizing its competitor's advertising as misleading to consumers, Sanderson's commercial is likely to mislead reasonable consumers into believing that Sanderson products were no different than its competitors who never used antibiotics in their chicken production.  *See Kellman*, 313 F. Supp. 3d at 1049 ("A perfectly true statement couched in such a manner that it is likely to mislead or deceive the consumer, such as by failure to disclose other relevant information, is actionable under [the UCL and FAL]." (internal quotation marks omitted)).  Plaintiffs have sufficiently alleged Sanderson's actions are likely to mislead reasonable consumers to believe Sanderson's products are the same as competitors that never administer antibiotics during their production, for which a reasonable consumer is willing to pay a premium.[4]

With regard to the raising and treatment of chickens, Plaintiffs rely on surveys indicating

---

[4] In a footnote of its reply brief, Sanderson asserts the full context of its website's homepage could not mislead consumers because it repeats the message that "all chickens must be clear of antibiotics before they leave the farm" and contains a links to other webpages which disclose Sanderson's antibiotic use.  For the reasons discussed above, these arguments fail.

that at least half of consumers understand "natural" to mean the animal roamed outdoors. Therefore, since Sanderson's chickens allegedly are kept indoors, and none of the advertisements bearing the "100% Natural" slogan disclaim the fact that the chickens never go outside, Plaintiffs have sufficiently plead that Sanderson actually raises its chickens in conditions that are contrary to what Sanderson leads consumers to believe. *Cafasso*, 637 F.3d at 1055. Defendant's argument that it never depicts its chickens going outdoors and therefore cannot mislead is underwhelming. Plaintiffs have sufficiently plead that a reasonable consumer understands the use of "natural" to mean a host of expectations, including the fair inference that the animal was allowed to move outdoors. When Sanderson employs such terminology, its silence does not foreclose the claim of potential consumer confusion. *Cf. Williams*, 552 F.3d at 939. Again, Plaintiffs have alleged with requisite particularity that Sanderson's actions are different from what it leads consumers to believe. *Cafasso*, 637 F.3d at 1055.

Similarly, Plaintiffs' allegations regarding Sanderson's contribution to antibiotic resistance are sufficient at the pleading stage to survive a motion to dismiss. According to Sanderson, the prior order granting leave to amend permitted Plaintiffs only to remedy their previously deficient allegations and theories. Sanderson believes that Plaintiffs' prior references to the threat of using antibiotics on the spread of human antibiotic resistance in the FAC and SAC were untethered to any theory as to why Sanderson's advertising was false and misleading. Plaintiffs therefore, in Sanderson's view, may not now allege new theories upon which to allege false advertising as that is not within the confines of the order granting leave to amend and would prejudice Defendant by opening a potentially new area for discovery. The allegations regarding the public health threat of antibiotic-resistant bacteria, however, are not new to the TAC. (*See* FAC ¶¶ 29-34, 72; SAC ¶¶ 4, 11-17.) Additionally, the FAC order recognized that Plaintiffs plausibly alleged a reasonable consumer could find Sanderson's marketing and advertising materials deceptive because surveys indicating a majority of consumers believed "it is important to reduce antibiotic use in food production and improve the living conditions of animals." The TAC simply articulates with greater clarity how these factual allegations are linked to why Sanderson's "100% Natural"

advertising is false and misleading.  The cases Defendant invokes are inapposite, as they involve a plaintiff alleging entirely new claims in an amended complaint without seeking the court's permission.  *See, e.g.*, *DeLeon v. Wells Fargo Bank, N.A.*, No. 10-cv-01390-LHK, 2010 WL 4285006, at *3 (N.D. Cal. Oct. 22, 2010) (plaintiffs asserted several new claims for the first time in amended complaint).  Further, the risk of expansive new discovery is minimal, as these factual allegations have been part of Plaintiffs' complaint since the FAC.  Plaintiffs have properly complied with the order granting leave to amend.

Plaintiffs aver that Sanderson's representation its chicken is "100% Natural" is false because Sanderson's process contributes to the build-up of unnatural antibiotic-resistant bacteria, and Sanderson thereby misleads the public regarding the threat to public health the product entails.  Defendants argue, *inter alia*, that Plaintiffs: (1) rely on contorted and counterfactual interpretations of Sanderson's advertising; and (2) there is no basis in the TAC from which to infer a reasonable consumer would be misled by Sanderson's advertisements.  None of Sanderson's arguments justify dismissing Plaintiffs' complaint as a matter of law.

Plaintiffs target several advertisements for referring to Sanderson's chickens as being free of antibiotics without clarifying for consumers that antibiotics were used in the production process and thereby contribute to the growing risk of antibiotic resistance.  Defendant believes no reasonable interpretation of its advertisements can support such allegations because Sanderson never refers to or implies anything about antibiotic resistance.  This misconstrues Plaintiffs' complaint.  Plaintiffs contend and sufficiently plead that when Sanderson advertisements mask the difference between Sanderson's products—which are raised with antibiotics and cleared of the drugs before point of sale—and competitors' products which never encounter antibiotics, Sanderson likely misleads consumers into thinking the key concern is whether antibiotics residues remain on the product, and not how the use of antibiotics in the production of chicken can contribute to antibiotic resistance *even after* the drugs are cleared from the animal's system.  The same is true for commercials that declare federal law requires chicken products to be cleared of antibiotics before reaching grocery stores without divulging the extent of Sanderson's antibiotic

use. Moreover, Plaintiffs sufficiently allege the falsehood of Sanderson's representations by citing to numerous studies and reports regarding how the overuse of antibiotics in agriculture contributes to antibiotic resistance and alleging that Sanderson chickens do in fact contain antibiotic-resistant bacteria when they leave the grow-out facilities. *Cafasso*, 637 F.3d at 1055.

Plaintiffs further contend the video "How We Grow Our Chicken" does not disclose the full extent of Sanderson's antibiotic use. "The California Supreme Court has recognized that [the UCL and FAL] prohibit not only advertising which is false, but also advertising which, although true, is either actually misleading or which has a capacity, likelihood or tendency to deceive or confuse the public." *Williams*, 552 F.3d at 938 (internal quotation marks and alterations omitted). Sanderson's statements that the "only time we inject antibiotics" is a single time under the shell and that broiler chickens are not injected with anything, (TAC ¶ 67), are true standing alone, but together their combined message is potentially misleading to the reasonable consumer. Injection is not the only means of administering antibiotics to chickens, and Plaintiffs aver Sanderson routinely feeds antibiotics to its broiler chickens.

## V.  CONCLUSION

For all of the foregoing reasons, Sanderson's motion to dismiss is denied.[5]

**IT IS SO ORDERED**.

Dated: December 3, 2018

_____
RICHARD SEEBORG
United States District Judge

---

[5] Plaintiffs' motion to seal portions of the TAC (Dkt. 114) is granted, but with Defendant's proposed redactions (Dkt. 117-2). Plaintiffs also filed a motion to seal portions of their opposition brief. (Dkt. 122.) Since Defendant did not file a declaration as required by Local Rule 79-5(e)(1), that sealing motion is denied. *See* L.R. 79-5(d)(1)(A) ("Reference to a stipulation or protective order that allows a party to designate certain documents as confidential is not sufficient to establish that a document, or portions thereof, are sealable). Defendant is reminded to follow Local Rule 79-5(d)(1)(D), in which it must submit an unredacted version of the document sought to be filed under seal that includes, *by highlighting or other means*, the portions of the document that have been omitted from the redacted version.