Mark McKane, P.C. (SBN 230552)
mark.mckane@kirkland.com
KIRKLAND & ELLIS LLP
555 California Street
San Francisco, California 94104
Telephone: (415) 439-1400
Facsimile: (415) 439-1500

Gregg F. LoCascio, P.C. (admitted *pro hac vice*)
gregg.locascio@kirkland.com
Michael Glick (admitted *pro hac vice*)
michael.glick@kirkland.com
Terence J. McCarrick (admitted *pro hac vice*)
terence.mccarrick@kirkland.com
KIRKLAND & ELLIS LLP
655 Fifteenth Street, N.W.
Washington, D.C.  20005
Telephone: (202) 879-5000
Facsimile: (202) 879-5200

*Attorneys for Defendant*
*Sanderson Farms, Inc.*

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA
## SAN FRANCISCO DIVISION

| | |
|---|---|
| FRIENDS OF THE EARTH, and CENTER FOR FOOD SAFETY,<br><br>Plaintiffs,<br>vs.<br><br>SANDERSON FARMS, INC.,<br><br>Defendant. | CASE NO. 3:17-CV-03592 (RS)<br><br>**DEFENDANT SANDERSON FARMS, INC.'S REPLY IN SUPPORT OF MOTION FOR SANCTIONS FOR FAILING TO COMPLY WITH FIRST AMENDMENT ORDERS**<br><br>Judge: The Honorable Sallie Kim<br>Date: March 11, 2019<br>Time: 9:30 a.m.<br>Location: Courtroom C - 15th Floor<br>450 Golden Gate Avenue<br>San Francisco, CA 94102 |

## INTRODUCTION

Plaintiffs' opposition is notable for what it does not say: it does not say that Plaintiffs' production of information in a non-downloadable, self-expiring format was authorized by this Court (or any other); it does not say that Plaintiffs provided documents consistent with the ESI Protocol in this case; and it does not say why Plaintiffs failed to respond to Sanderson's written communication identifying deficiencies in Plaintiffs' production for over 48 hours and only did so *after* Sanderson filed its sanctions motion. Instead, Plaintiffs—for the first time—suggest that they were compelled only to turn over "information" (rather than actual documents) to satisfy their discovery obligations, and that Sanderson jumped the gun in filing its motion. The Court should not believe it.

First, both this Court and Judge Seeborg explicitly ordered Plaintiffs to produce *documents*, not merely information. *See* ECF No. 141 at 1 (compelling "Plaintiffs to produce **documents** as ordered . . . on August 29 . . . and October 3") (emphasis added); ECF No. 145 at 3 (requiring Plaintiffs to "immediately produce the **documents**" absent a stay) (emphasis added). And Plaintiffs have recognized as much in their own prior pleadings before this Court and the Ninth Circuit. *See, e.g.*, ECF No. 143 at 2 (acknowledging in stay briefing that the Court had "ordered Plaintiffs to produce [] un-redacted documents"); *In re Friends of the Earth, et al.*, Case No. 18-73418, Dkt. No 3 (9th Cir. Jan. 25, 2019) ("On January 23 . . . Magistrate Judge Kim ordered Plaintiffs to produce the full un-redacted documents.").

Second, Plaintiffs' suggestion that Sanderson was required to further meet and confer before filing this motion ignores the tortured history of Plaintiffs' failure to comply with Court orders regarding this issue (dating back to orders in August 2018) as well as Plaintiffs' failure to respond to Sanderson's concerns regarding their production for *more than 48 hours*. Indeed, Plaintiffs do not dispute that Sanderson promptly identified the deficiencies in Plaintiffs' production in writing the morning after the production, yet Plaintiffs never responded until after Sanderson filed its motion. At no point between Sanderson's outreach and the filing of its sanctions motion did Plaintiffs indicate that they were evaluating the situation and attempting to correct the deficiencies in their production. And until they filed their opposition to Sanderson's motion, Plaintiffs never explained why they produced the requested materials in the format that they did. The onus was on Plaintiffs to comply with Court orders, not on Sanderson to repeatedly confer with Plaintiffs to secure after-the-fact compliance.

1    To be sure, Plaintiffs seem to believe that Sanderson's request (and the Court's orders) required

2    them to violate the associational rights of third parties through the production of the identifying

3    information at issue.  But Plaintiffs' position is not just wrong as a matter of law (as multiple courts have

4    held), it also misses the point by failing to address the thrust of Sanderson's motion or the questions posed

5    by the Court: whether Plaintiffs complied with the Court's prior orders in their February 1 production.

6    "[W]hen courts issue orders, parties follow."  *Cuviello v. Field Entm't Inc.*, 2015 WL 877688, *1 (N.D.

7    Cal. Feb. 27, 2015).  Because Plaintiffs did not, they should compensate Sanderson for time and resources

8    spent securing compliance with the Court's prior (and unambiguous) discovery orders.

9    <u>**ARGUMENT**</u>

10   **I.    Plaintiffs Did Not Comply With The Court's Production Orders Or ESI Protocol.**

11   Plaintiffs torture the plain language of the Court's orders in an after-the-fact attempt to excuse

12   their impermissible production method.  For the first time in this months-long dispute, Plaintiffs contend

13   that the Court ordered production only "of the *information* that had been redacted and referenced in

14   Plaintiffs' privilege logs, not . . . un-redacted copies of documents."  Feb. 19, 2019 Pls.' Opp. to

15   Sanderson's Mot. for Sanctions ("Opp."), ECF No. 168, at 2 (emphasis in original).  That is inconsistent

16   with the parties' briefing and correspondence, the Court's orders, and common sense.  To begin, the relief

17   requested in Sanderson's initial discovery letter on this issue in August 2018 was the "produc[tion] [of]

18   un-redacted versions of the documents logged subject to First Amendment privilege."  ECF No. 95 at 5.

19   And Sanderson re-iterated its expectation that Plaintiffs would produce documents in correspondence.

20   *E.g.*, ECF No. 154-2 at 1 (titling email "Un-redacted Documents" and asking Plaintiffs to "confirm that

21   [they were] providing un-redacted versions of the documents ordered produced.").  Until Plaintiffs filed

22   their latest opposition, they shared Sanderson's understanding.  In fact, in prior briefing, Plaintiffs'

23   themselves recognized that the Court "ordered Plaintiffs to produce [] un-redacted documents."  ECF No.

24   143 at 2; *see also In re Friends of the Earth, et al.*, Case No. 18-73418, Dkt. No 3 (9th Cir. Jan. 25, 2019)

25   ("On January 23 . . . Magistrate Judge Kim ordered Plaintiffs to produce the full un-redacted documents.");

26   ECF No. 139 at 1 ("The parties submit this joint letter regarding enforcement of this Court's orders dated

27   August 29 . . . and October 3 . . . compelling Plaintiffs to produce un-redacted documents.").  Plaintiffs'

28   newfound interpretation appears to be nothing more than a *post hoc* effort to escape sanctions.

1    More fundamentally, it is indisputable that the Court compelled Plaintiffs to produce un-redacted

2    versions of the documents identified on their privilege logs.   In denying Plaintiffs' motion for

3    reconsideration last October, the Court described its initial production order as holding "that Plaintiffs

4    failed to provide evidence that disclosure of certain portions of *documents* violated" Plaintiffs' and

5    non-members' associational interests.  ECF No. 115 at 1 (emphasis added).  And more recently, both this

6    Court and Judge Seeborg ordered Plaintiffs to produce "documents," not just "information."  ECF No.

7    141 ("The Court GRANTS [Sanderson's] request and ORDERS Plaintiffs to produce *documents* as

8    ordered . . . on August 29 . . . and October 3 . . . by February 1.") (emphasis added); ECF No. 145 at 3

9    ("Unless [Plaintiffs] ha[ve] obtained [a stay] by February 1 [] they shall immediately produce the

10   *documents*.") (emphasis added).

11   It is no answer to say that Plaintiffs "provided" the un-redacted documents in a self-expiring,

12   view-only, non-downloadable format.  That mode of production—which Plaintiffs had never used

13   before—does not comply with the form of production, load file, production media, or metadata

14   requirements of the ESI Protocol.  ECF No. 63 at 3-5.[1]  And Plaintiffs do not—because they cannot—

15   "argue that [their] noncompliance [with those standards] was inadvertent or in good faith."  *Cuviello*, 2015

16   WL 877688, at *3.  Plaintiffs did not experience "technical difficulties that might justify" their unusual

17   production format.  *See id.*  Rather, Plaintiffs made a deliberate choice to use "a read-only format" "to

18   best protect the interests of Doe Organization."  *See* Opp. at 9.  Whatever their intentions, Plaintiffs had

19   no authority to "ignore the Court's [o]rders and make unilateral decisions about production."  ECF No. 141

20   at 2.  Indeed, Plaintiffs' reason for violating the Court's orders is irrelevant: "[i]ntent is not an issue in

21   civil contempt proceedings.  The sole question is whether a party complied with the [] [C]ourt's order."

22

23   [1] Plaintiffs' contention that "[e]xpiring links are the norm in" document production and that Sanderson
has produced documents by way of expiring link is both irrelevant and readily distinguishable.  Unlike

24   Plaintiffs, Sanderson has consistently produced documents in a *downloadable*, Bates-stamped format
compliant with the Court-ordered protocol.  Because the user could could download Sanderson's

25   productions, it would not matter if the underlying link expired following the download, as the user would
no longer need to access the link anyway.  By contrast, Plaintiffs' provision of non-downloadable,

26   view-only documents—which were set to become unavailable before the depositions of Plaintiffs'
corporate representatives were to occur the following week—is substantially different insofar as the link

27   was the only way to view the non-downloadable documents.  Once such link expired, there was no way

28   to even view the documents.

*In re Search of Content Stored at Premises Controlled by Google Inc.*, 2017 WL 4700056, at \*1 (N.D. Cal. Oct. 19, 2017) (Seeborg, J.) (quoting *Donovan v. Mazzola*, 716 F.2d 1226, 1240 (9th Cir. 1983) *remanded by* 2018 WL 6324764 (9th Cir. Oct. 18, 2018). No court had authorized Plaintiffs to produce documents in the format and with the restrictions they unilaterally chose to apply. Plaintiffs should therefore be sanctioned for such misconduct.

Plaintiffs' production was also deficient in other respects: it did not include Bates-stamped materials, was subject to a unilateral "Attorney' Eyes Only" restriction, and failed to include certain attachments. Plaintiffs claim that they "previously provided a chart linking [document identification numbers]" on their privilege log to "earlier Bates-numbered documents." Opp. at 10. But to line up the different pieces of information provided by Plaintiffs on February 1, Sanderson would have been required to cross-reference Plaintiffs' privilege logs (which utilized one set of document identifiers), their redacted productions (which utilized Bates-stamp identifiers different from the privilege log), and the view-only materials they temporarily made available. Sanderson should not have to spend resources connecting the dots between different parts of Plaintiffs' production: the specifications in the ESI Protocol exist to protect Sanderson (and all parties) from such waste.

Nor was Plaintiffs' "Attorneys' Eyes Only" designation justified. Plaintiffs admit their efforts to protect Doe Organization's interests were "potentially overbroad," in applying viewing restrictions to far more documents than those at issue in Doe Organization's motion. Opp. at 9-11. That restriction prevented counsel from timely sharing and receiving information about the individuals and entities listed on Plaintiffs' documents, and forced Sanderson—yet again—to spend time cataloging the deficiencies in Plaintiffs' productions. Plaintiffs respond that Sanderson could not be prejudiced by their designations because both parties are "well aware that the designation does not have the force of law in this litigation." Opp. at 11. If true, it is difficult to see how Plaintiffs' deliberate use of that designation was made in good faith or out of genuine concern for Doe Organization's interests. Plaintiffs' application of a heightened confidentiality restriction, without judicial permission, appears to be the latest in a series of "stalling tactic[s]" designed to hamper Sanderson's review of materials. *See* ECF No. 141 at 2.[2]

---

[2] Nor does Sanderson's inadvertent use of an "Attorneys' Eyes Only" designation over 6 months ago make a difference. As Sanderson explained to Plaintiffs at the time, Sanderson's application of such designation

1    Moreover, despite claims to the contrary, Plaintiffs have still failed to produce attachments to the

2    documents at issue.  Plaintiffs argue that the only document identified by Sanderson was an attorney-client

3    communication that Plaintiffs inadvertently disclosed.  Opp. at 12.[3]  But that example was illustrative, not

4    exhaustive.  Sanderson has subsequently identified attachments to five other documents, which Plaintiffs

5    have neither produced nor identified on their privilege logs.[4]  Plaintiffs have provided no explanation for

6    why such attachments were not made available on February 1 (or since).  Instead, Plaintiffs' failure to

7    produce full families (including attachments) is just another example of the multiple ways in which

8    Plaintiffs' production failed to comply with the Court's orders and ESI Protocol.

9    Sanderson understands that Plaintiffs take seriously the First Amendment rights of their

10   organizations and third parties, and Sanderson did not seek the subject documents for the purpose of

11   frustrating or impinging upon those rights.  But this Court, Judge Seeborg, and the Ninth Circuit have

12   repeatedly held that Plaintiffs failed (and are unlikely to prevail in the future) on the merits of their

13   associational privilege claims.  *See* ECF Nos. 96, 115, 124, 141, 145; *In re Friends of the Earth, et al.*,

14   Case No. 18-73418, Dkt. No. 7 (9th Cir. Jan. 31, 2019).  For that reason, Plaintiffs' continued effort to

15   justify their production format by pointing to "the rich tradition of the First Amendment" "reflect[s]

16   nothing more than an unwillingness to play by the same rules as any other party to litigation."  *Cuviello*,

17   2015 WL 877688, at *1.  Plaintiffs' provision of attorney-restricted, non-downloadable, non-Bates-

18   stamped materials in a temporary format was not a meaningful attempt to comply with Plaintiffs'

19   discovery obligations.  And Plaintiffs should not receive the benefit of patchwork efforts to cure the

20   deficiencies in their production made only ***after*** Sanderson filed the present motion.  To the contrary,

21   Plaintiffs' "failure to" provide materials in the format required by the ESI Protocol "until after" Sanderson

22

23   was the result of a vendor miscommunication; Plaintiffs' use of that designation was deliberate and made
     with the apparent knowledge that the designation lacked any legal meaning.

24   [3] To be clear, Sanderson does not agree the communication clawed back by Plaintiffs—which was an

25   email shared between Plaintiffs and third-parties—is privileged.  Sanderson destroyed copies of that
     communication because that is what the Protective Order requires following a request by an opposing

26   party.  Plaintiffs have yet to provide a substitute "non-privileged" version of that exchange, as promised.
     Sanderson therefore reserves its rights to move to compel production of the original communication

27   following evaluation of Plaintiffs' substitute document.

28   [4] FOE_0000353, FOE_0000362, FOE_0000364, FOE_0000366, and CFS_0000475.

1  filed its sanctions motion "was willful." *See Banks ex rel. Banks v. Modesto City Sch. Dist.*, 2006 WL

2  3734231, at *7 (E.D. Cal. Dec. 18, 2006).  And Plaintiffs concede as much, admitting that their production

3  specifications were tailored to protect the interests of Doe Organization, not the terms of this Court's prior

4  orders and discovery Protocol.  Opp. at 10-11.  But "[t]his [C]ourt never permitted [Plaintiffs]" to restrict

5  disclosure of documents in the manner they did, *Cuviello*, 2015 WL 877688, at *3, and Plaintiffs should

6  be sanctioned for their willful noncompliance.

7  ## II.    Plaintiffs Repeatedly Ignored Sanderson's Outreach.

8          The Court should also reject Plaintiffs' assertion that Sanderson filed its motion prematurely as

9  part of a pattern of threatening and seeking sanctions.  First, Sanderson's record of outreach regarding the

10 documents at issue does not support such contention.  Following the Ninth Circuit's denial of Plaintiffs'

11 mandamus petition on January 31, Sanderson emailed Plaintiffs on the morning of Friday, February 1 to

12 confirm that they intended to produce the documents at issue; Plaintiffs did not respond.  *See* ECF No.

13 154-1 ¶¶ 28-29.  Later that day, Sanderson contacted Plaintiffs by telephone to inquire about the status of

14 their production; Plaintiffs refused to even confirm whether Plaintiffs intended to make the production as

15 ordered. *Id.* ¶ 32.  After Plaintiffs provided their non-compliant production by password-protected link at

16 9:33pm that night, Sanderson emailed Plaintiffs the following morning (Saturday, February 2 at 10:19am),

17 identifying the deficiencies in Plaintiffs' production and asking them to correct the issues immediately.

18 *Id.* ¶¶ 33-35.  Plaintiffs did not respond for the rest of the day on Saturday, all day on Sunday, or through

19 Monday morning.  Accordingly, Sanderson filed its motion at 1:05pm on Monday, February 4—nearly

20 50 hours after Sanderson's February 2 email.  *See* ECF No. 154.  Only then—*after* Sanderson filed its

21 motion—did Plaintiffs respond to Sanderson's email.  Plaintiffs cannot now argue that *Sanderson* failed

22 to reach out or provide them "with a reasonable time" to fix the admitted deficiencies in their production

23 production.  Opp. at 6.  To the contrary, if "Plaintiffs were working to address [Sanderson's] concerns"

24 on Monday morning (as their opposition suggests), the only question is why they did not simply email

25 Sanderson to say so.  *Id.*  "The failure to respond in any way to [Sanderson's] repeated inquiries

26 concerning" Plaintiffs production "demonstrate[s] willfulness."  *See Banks*, 2006 WL 3734231, at *7.

27 While Plaintiffs point to their after-the-fact efforts to remedy their production issues, it is equally possible

28 that Plaintiffs' belated efforts came only *because* Sanderson filed its motion—a motion Sanderson should

1   never have had to spend time and resources preparing in the first place.  In that regard, Plaintiffs' "untimely

2   production of the [] records does not ameliorate the need for sanctions because '[b]elated compliance with

3   discovery orders does not preclude the imposition of sanctions' as the [l]ast-minute tender of documents

4   does not cure the prejudice to opponents.'"  *Varney v. Cal. Highway Patrol*, 2013 WL 2299544, at *3

5   (N.D. Cal. May 24, 2013) (quoting *N. Am. Watch Corp. v. Princess Ermine Jewels*, 786 F.2d 1447, 1451

6   (9th Cir. 1986)).  The Court should reject Plaintiffs' effort to shift blame to Sanderson.

7       The Court should also disregard Plaintiffs' contention that sanctions requests are a "repeated

8   tactic" by Sanderson.  *See* Opp. at 5, n. 5.  It is true that Sanderson filed a Rule 11 motion earlier in this

9   case, and that such motion was denied.  *See* ECF Nos. 49, 66.  But Plaintiffs do not tell the full story.

10  Sanderson's motion was premised on grounds that Plaintiffs' counsel intentionally misrepresented USDA

11  residue data in multiple pleadings after being told by USDA scientists that (i) USDA never detected the

12  presence of contaminants in Sanderson's chicken, and (ii) data erroneously provided by USDA in response

13  to a FOIA request by Plaintiffs' counsel was raw, preliminary, unconfirmed, and meaningless.  While the

14  Court denied Sanderson's motion, the parties thereafter deposed representatives from USDA about their

15  conversations with Plaintiffs' counsel concerning the USDA data in question.   Following those

16  depositions, which laid bare counsel's conduct:

17      • the original lead Plaintiff in this action—the Organic Consumers Association—
18        voluntarily dismissed their claims, ECF No. 80;

19      • lead counsel for the Plaintiffs withdrew from the case, ECF No. 97-100;

20      • the remaining Plaintiffs amended their complaint to remove more than two dozen
        express references to the USDA data.  *Compare* First Am. Compl., ECF No. 31, ¶¶ 2-
21        4, 16-27, 35-44 *with* Third Am. Compl., ECF No. 114-4; and

22      • Plaintiffs retracted dozens of public statements about USDA testing of Sanderson
        chicken.

23  Thus, while Plaintiffs prevailed in defeating the Rule 11 motion, discovery confirmed that Sanderson's

24  motion was well-founded (which is why Sanderson asserts a defense of unclean hands concerning

25  Plaintiffs' public misrepresentations of Sanderson's products and advertising, *see* ECF No. 131 at 12-13;

26  *see also* ECF No. 140 (opposing Plaintiffs' motion to strike that defense)).[5]

27  _____

28  [5] Plaintiffs claim none of the documents at issue discuss Plaintiffs' public statements or the USDA residue
    data at issue in Sanderson's unclean hands defense.  Opp. at 4.  That is blatantly false.  *E.g.*, CFS_0000449,

III.     **Sanderson's Responses to the Court's Questions.**

Plaintiffs' opposition offers responses to the questions ordered answered by the Court on February 8.  ECF No. 161 at 2.  But the bulk of Plaintiffs' answers attempt to re-litigate the merits of Plaintiffs' privilege claims, rather than assert Plaintiffs' compliance with the Court's production orders and ESI Protocol.  Without addressing the underlying merits of Plaintiffs' privilege assertions, Sanderson respectfully submits that the following are the proper answers to the Court's questions:

*1. Did Plaintiffs provide a link to the documents that were the subject of the Court's orders (most recently, Dkt. 145), in a format that automatically expired and did not allow for downloading?*  Yes. On February 1, Plaintiffs provided Sanderson with a password-protected link to non-downloadable materials.  The link was to expire in 5 days (a little more than 48 hours after Sanderson filed its motion).

*2.  If yes, under what authority did Plaintiffs take that action?*  None.  Plaintiffs' production format—never before used in this case—was not in keeping with the ESI Protocol or the Court's prior orders requiring production of un-redacted documents.

*3.  Did Plaintiffs create a password titled "K&E1stAmViolation" for the documents and send that password in an electronic message titled "First Amendment Violation Production/Sanderson?* Yes.  In their own words, Plaintiffs believe that "the password and title are factual" and that "disclosure . . . in this litigation violated the First Amendment rights of third parties."  Opp. at 13.  Plaintiffs also believe that "[n]o court has ruled otherwise."  *Id.*  Plaintiffs' language and understanding is inconsistent with the terms of this Court's, Judge Seeborg's, and the Ninth Circuit's orders denying the merits of Plaintiffs' third-party associational privilege claims.  ECF Nos. 96, 115, 124, 141, 145; *In re Friends of the Earth, et al.*, Case No. 18-73418, Dkt. No. 7.  Plaintiffs' conduct is also inconsistent with the professionalism and level of discourse expected of counsel practicing in this District.  N.D. Cal. Civ. L.R. 11-4(a).

*4.  Did Plaintiffs designate the documents as "Attorneys' Eyes Only"?*  Yes.  All documents provided by Plaintiffs on February 1 contained an "Attorneys' Eyes Only" viewing restriction.

*5.  If yes, on what basis did Plaintiffs choose to label the documents in question "Attorneys' Eyes Only"?*  None.  The Protective Order does not provide for use of an "Attorneys' Eyes Only" designation.

---

CFS_0000452, CFS_0000455, CFS_0000460, CFS_0000462, CFS_0000466.  The third parties identified in Plaintiffs' emails commented on and were recipients of the USDA data and public statements in question.

ECF No. 54.  Plaintiffs did not seek heightened disclosure restrictions as invited by this Court, ECF No. 115 at 5, nor were such restrictions provided for under Judge Seeborg's order denying a stay, which allowed for such protections only pending mandamus review (which the Ninth Circuit denied prior to the production date), ECF No. 145 at 3.  And earlier that day, Plaintiffs had requested the Court apply such restriction to the 11 documents involving Doe Organization.  *See* ECF No. 153 at 1 (requesting that the "Court temporarily and partially stay enforcement of any order compelling production of the 11 documents at issue in Doe Organization's filing pending full consideration of Doe Organization's request.").  The Court never granted such request, yet Plaintiffs nonetheless applied such restriction to its *entire* production.  Opp. at 9-11.

*      *      *

Rule 37 requires a court to award fees and costs "unless the failure [to comply with a court order] was substantially justified or other circumstances make an award of expenses unjust."  Fed. R. Civ. P. 37. Plaintiffs' answers to the Court's questions fall short of that standard.  Opp. at 11-14.  "Rules have to matter."  *Cuviello*, 2015 WL 877688, at *4.  Plaintiffs "not only [have] failed to comply with this [C]ourt's discovery order[s] . . . but even after [their] application for a writ of mandamus was denied [] continue[d] to violate the authority of this [C]ourt" and find ways to skirt their production obligations.  *See id.* at *3. Providing limited access to self-expiring, non-downloadable, restricted-use documents do not qualify as "production" under any of the relevant orders in this case, and there is "no clearer scenario in which an award of reasonable fees and costs associated with bringing [a] motion would be warranted."  *Id.*[6]

## CONCLUSION

For the foregoing reasons, Sanderson respectfully requests that the Court impose the monetary sanctions requested by Sanderson.

---

[6] Plaintiffs do not meaningfully challenge the reasonableness of Sanderson's fee request.  Other than a one-sentence mention in a footnote,  Plaintiffs do not dispute that Sanderson, in fact, pays the rates in question, ECF No. 154-1 ¶ 38, or that courts in this district have approved fees of similar magnitude in similar circumstances, *see Cuviello*, 2015 WL 877688, at *4 (imposing $11,275.00 sanction).

1    DATED: February 26, 2019                Respectfully submitted,

2                                            /s/ Terence J. McCarrick
                                             Terence J. McCarrick
3
     Mark McKane, P.C. (SBN 230552)          Gregg F. LoCascio, P.C. (admitted *pro hac vice*)
4    mark.mckane@kirkland.com                Michael Glick (admitted *pro hac vice*)
     KIRKLAND & ELLIS LLP                    Terence J. McCarrick (admitted *pro hac vice*)
5    555 California Street                   KIRKLAND & ELLIS LLP
     San Francisco, California  94104        655 Fifteenth Street, N.W.
6    Telephone: (415) 439-1400               Washington, D.C.  20005
7    Facsimile: (415) 439-1500               Telephone: (202)-879-5000
                                             Facsimile: (202)-879-5200
8
                                             *Counsel for Defendant*
9                                            *Sanderson Farms, Inc.*

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

**CERTIFICATE OF SERVICE**

2        I hereby certify that on this 26th day of February, 2019, a copy of the foregoing was served upon

3   all counsel of record by ECF.

4

5

6                                        _/s/ Terence J. McCarrick_
                                         Terence J. McCarrick
7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28