UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

FRIENDS OF THE EARTH, et al.,

    Plaintiffs,

v.

SANDERSON FARMS, INC.,

    Defendant.

Case No. 17-cv-03592-RS

**ORDER GRANTING MOTION TO DISMISS WITHOUT PREJUDICE**

## I. INTRODUCTION

Defendant Sanderson Farms, Inc. ("Sanderson") brings this motion under Federal Rule of Civil Procedure 12(h)(3) asserting Friends of the Earth ("FoE") and Center for Food Safety ("CFS") (collectively "Plaintiffs") have not produced evidence in discovery to establish their standing under Article III. For the reasons discussed below, Sanderson's motion is granted.

## II. BACKGROUND

The full facts of this case were set forth in the prior order denying Sanderson's motion to dismiss the First Amended Complaint ("FAC") and need not be repeated here. In this latest motion practice, Sanderson contends neither plaintiff can establish organizational standing to satisfy Article III's injury-in-fact requirement. Sanderson first made this argument in its initial motion to dismiss, which was denied based on the Plaintiffs' pleadings in the FAC. Now that non-expert discovery has concluded, Sanderson contends the evidence gathered during discovery shows that Plaintiffs cannot establish organizational standing and they can no longer rely upon the allegations in their complaint (now the Third Amended Complaint ("TAC")) to allege an injury

from Sanderson's advertisements.

In its supplemental response to Sanderson's first set of interrogatories, FoE declared it suffered injury from Sanderson's ads by: (1) publishing the "Chain Reaction" reports (a ranking of top U.S. restaurant chains on their antibiotic policies and practices); (2) drafting press releases; (3) publishing blogs; (4) issuing Tweets and Facebook posts; (5) emailing Action Alerts; (6) producing a digital and print News Magazine; (7) contacting Sanderson customers, including Darden Restaurants (the owner of Olive Garden), with letters imploring them to change their antibiotic policies and practices and delivering a petition of 130,000 signatures; (8) approximately $5,500 in consultant costs; and (9) employee costs associated with the above. CFS's supplemental responses to Sanderson's interrogatories are similar, including: (1) publishing the "Chain Reaction" reports; (2) drafting press releases; (3) publishing blogs; (4) speaking at conferences and on panels; and (5) employee costs associated with the above.

### III. LEGAL STANDARD

"If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action." Fed. R. Civ. P. 12(h)(3); *see also Arbaugh v. Y&H Corp.*, 546 U.S. 500, 506 (2000) ("The objection that a federal court lacks subject-matter jurisdiction . . . may be raised by a party, or by a court on its own initiative, at any stage in the litigation[.]"). This includes evaluating the threshold issue of a plaintiff's standing to sue. *Bernhardt v. City of Los Angeles*, 279 F.3d 862, 868 (9th Cir. 2002). Rule 12(h)(3) effectively prolongs the time for a Rule 12(b)(1) motion to dismiss for lack of subject matter jurisdiction. *See Wood v. City of San Diego*, 678 F.3d 1075, 1082 (9th Cir. 2012).

A motion to dismiss a complaint under Rule 12(b)(1) of the Federal Rules of Civil Procedure challenges the court's subject matter jurisdiction over the asserted claims. It is the plaintiff's burden to prove jurisdiction at the time the action is commenced. *Tosco Corp. v. Cmtys. for a Better Env't*, 236 F.3d 495, 499 (9th Cir. 2001), *overruled on other grounds by Hertz Corp. v. Friend*, 559 U.S. 77 (2010); *Morongo Band of Mission Indians v. Cal. State Bd. of Equalization*, 858 F.2d 1376, 1380 (9th Cir. 1988). "A Rule 12(b)(1) jurisdictional attack may be

facial or factual." *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004). "In a facial attack, the challenger asserts that the allegations contained in the complaint are insufficient on their face to invoke federal jurisdiction." *Id.* Accordingly, when considering this type of challenge, the court is required to "accept as true the allegations of the complaint." *U.S. ex rel. Lujan v. Hughes Aircraft Co.*, 243 F.3d 1181, 1189 (9th Cir. 2001). By contrast, in a factual attack, "the challenger disputes the truth of the allegations that, by themselves, would otherwise invoke federal jurisdiction." *Safe Air*, 373 F.3d at 1039. In resolving a factual attack on jurisdiction, the court need not presume the truthfulness of the plaintiff's allegations and it may review evidence beyond the complaint without converting the motion to dismiss into a motion for summary judgment. *Id.* Once a factual challenge has been raised to the court's subject matter jurisdiction, the party opposing dismissal must "furnish affidavits or other evidence necessary to satisfy its burden of establishing subject matter jurisdiction." *Id.* (quotations omitted).

Article III of the U.S. Constitution authorizes the judiciary to adjudicate only "cases" and "controversies." The doctrine of standing is "an essential and unchanging part of the case-or-controversy requirement of Article III." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992). The three well-known "irreducible constitutional minim[a] of standing" are injury-in-fact, causation, and redressability. *Id.* at 560-61. A plaintiff bears the burden of demonstrating that her injury-in-fact is "concrete, particularized, and actual or imminent; fairly traceable to the challenged action; and redressable by a favorable ruling." *Monsanto Co. v. Geertson Seed Farms*, 561 U.S. 139, 149 (2010). Organizations establish injury-in-fact if they can demonstrate both (1) frustration of its organizational mission and (2) diversion of its resources to combat the particular conduct in question. *Smith v. Pac. Props. & Dev. Corp.*, 358 F.3d 1097, 1105 (9th Cir. 2004). An organization cannot "manufacture" an injury by sustaining litigation costs or by choosing to use resources to fix problems that otherwise would not have affected it. *La Asociacion de Trabajadores de Lake Forest v. City of Lake Forest*, 624 F.3d 1083, 1088 (9th Cir. 2010).

## IV. DISCUSSION

Sanderson's motion is centered on Plaintiffs' supplemental responses to Sanderson's Interrogatory No. 7, asking them to identify all bases for their contention that they lost money or property as a result of Sanderson's advertising identified in the complaint. Sanderson asserts three arguments for why the evidence cannot support Plaintiffs' interrogatory responses for standing: (1) any activities Plaintiffs undertook before August 1, 2016 (the date they swore they began diverting resources to address Sanderson's advertisements) cannot logically constitute diversions in response to those ads; (2) with regards to Plaintiffs' activities after August 1, 2016, but before filing this lawsuit (June 22, 2017), there is no evidence that Plaintiffs undertook any action in response to the advertising because (a) most of Plaintiffs' cited activities neither referenced Sanderson nor its advertising, (b) activities tangentially related to Sanderson were not a response to the challenged advertising and were merely continuations of preexisting initiatives, (c) activities not required by Sanderson's advertising cannot establish standing; and (3) Plaintiffs' actions after filing this lawsuit are litigation-related expenses that cannot be used to manufacture standing. Additionally, Sanderson challenges the materials Plaintiffs filed in support of their Opposition as improper and self-serving.

### A. Plaintiffs' Actions Prior to August 1, 2016

There is little to undercut Sanderson's contentions regarding Plaintiffs' activities prior to August 1, 2016. In their initial responses to Interrogatory No. 5, Plaintiffs represented they became aware of the Sanderson ads identified in the complaint on August 1, 2016. Moreover, both FoE and CFS represented in either depositions or post-deposition declarations that they did not divert resources to counteract Sanderson advertising before that date. Plaintiffs do not offer a persuasive counterargument in their Opposition, attempting to limit their admission to Sanderson's television ads and relying on the prior order denying the first motion to dismiss. None of the above admissions, however, distinguished between the Sanderson ads to which they referred, and the prior order was confined to the FAC, which had to be accepted as true. Finally, Plaintiffs conceded at oral argument that there was no diversion of resources by their organizations before

August 1, 2016. Accordingly, Plaintiffs cannot rely on evidence prior to August 1, 2016 to support their standing to sue.

### B. Plaintiffs' Actions Between August 1, 2016 and Filing This Lawsuit

Discovery has shown that Plaintiffs' activities after August 1, 2016 and prior to filing the complaint were not a reaction to Sanderson's advertising. Instead, they were continuations of non-Sanderson-specific initiatives Plaintiffs were undertaking in furtherance of their missions to address antibiotic use generally. Moreover, many of Plaintiffs' cited activities neither referenced Sanderson nor its advertising. Finally, activities not required by Sanderson's advertising cannot establish standing.

Through Plaintiffs' testimony and other produced documents, the record shows that: (1) Plaintiffs did not publish Action Alerts or send emails to their members addressing Sanderson's advertising; (2) Plaintiffs did not address Sanderson's advertising as part of its ongoing campaign to persuade Darden Restaurants to stop purchasing meats from routine antibiotic administrators, such as Sanderson; (3) Plaintiffs did not write letters to Sanderson or any of its customers complaining about Sanderson's advertising; (4) Plaintiffs produced no press release, blog post, or News Magazine article pertaining to or referencing Sanderson's advertising prior to the lawsuit; (5) Plaintiffs did not reference Sanderson or its advertising in the Chain Reaction reports until after litigation commenced; (6) Plaintiffs did not petition Sanderson (or anyone else) regarding Sanderson's advertising; and (7) Plaintiffs never engaged in protests at Sanderson (or anywhere else) regarding Sanderson's advertising.

Perhaps most damaging to Plaintiffs' cause are their own depositions where they admit they did not divert resources because of Sanderson's advertising and state they would have undertaken the same advocacy activities—including advocating against the use of antibiotics in animal agriculture and discouraging consumers from purchasing meat raised with routine antibiotics—even if Sanderson had never aired the challenged advertisements. The evidence in the record corroborates this testimony, indicating that Plaintiffs planned on targeting Sanderson's customers without reliance on its ads. Moreover, Plaintiffs stated in their depositions that they

would have encouraged Sanderson's customers to avoid Sanderson and other products that used routine antibiotics regardless of the existence of the advertisements. This is a false advertising case, and Plaintiffs must establish that their alleged injury is traceable to the challenged ads at issue. Instead, the record confirms they were incurring ordinary program costs regardless of Sanderson's advertising, and such expenses cannot be transformed into an injury-in-fact under Article III. Furthermore, Plaintiffs do not offer a serious argument as to why documents that do not mention Sanderson or involve Sanderson customers, let alone Sanderson advertisements, can support their standing. They further stated in their depositions that they were not forced to do anything in light of Sanderson's advertisements, providing further justification to dismiss their claims for lack of standing. *La Asociacion de Trabajadores*, 624 F.3d at 1088 n.4.

Plaintiffs' arguments in opposition are difficult to follow. Rather than responding directly to Sanderson's cited evidence, Plaintiffs invoke their own and use generalized arguments repeating their allegation that they have suffered an injury-in-fact by adjusting their preexisting initiatives to counteract Sanderson's ads. What evidence they do rely upon that mention Sanderson either: (1) discuss Sanderson's rejection of the science behind antibiotic-resistance, but not its advertisements or how they are misleading; (2) date from after the litigation commenced (which fails for the reasons discussed in the next section); or (3) are post-deposition declarations whose credibility are subject to question given the incentive to repaint prior testimony in a more flattering light, see *Halo Mgmt., LLC v. Interland, Inc.*, No. C-03-1106-MHP, 2004 WL 1781013, at *6 n.15 (N.D. Cal. Aug. 10, 2004). Moreover, where the post-deposition declarations directly contradict the prior depositions, the conflict must be resolved in favor of the latter.[1]

---

[1] The Ninth Circuit has noted in the summary judgment context that, as a general rule, an affidavit submitted in response to a motion which contradicts earlier sworn testimony without explanation of the difference does not automatically create a genuine issue of material fact. *Scamihorn v. Gen. Truck Drivers*, 282 F.3d 1078, 1085 n.7 (9th Cir. 2002). A district court, however, must make a factual determination that the contradiction was actually a sham. *Id.* Although a party may not create his own issue of fact by an affidavit contradicting his prior deposition testimony, the non-moving party is not precluded from elaborating upon, explaining, or clarifying prior testimony elicited by opposing counsel on deposition; *minor* inconsistencies that result from an honest discrepancy, a mistake, or newly discovered evidence is not a basis to exclude an opposition affidavit. *Id.* The Keever and Spector Declarations, to the extent they allege Plaintiffs' diverted

ORDER GRANTING MOTION TO DISMISS
CASE NO. 17-cv-03592-RS

6

The best evidence Plaintiffs offer is an email containing a link to a National Resources Defense Council article referring generally to Sanderson's ads being deceptive; an article Plaintiffs neither published nor discussed in the email chain. FoE also points to its supplemental interrogatory response that it spent thousands of dollars on consultant fees, which alone is wholly conclusory and inadequate as evidence of actual injury. Finally, while CFS represents in its post-deposition Spector Declaration that at least one of its staffers spent 25% more time on educating the public on why Sanderson's advertising was misleading, the declaration is suspect for the reasons just discussed and the figure is uncorroborated in the record. CFS had numerous opportunities prior to this declaration to showcase this expenditure, including the initial and supplemental interrogatory responses, document production, and the deposition itself. Its failure to do so is telling. Ultimately, Plaintiffs counterarguments only provide further support for the notion that Plaintiffs were advocating generally for reducing routine antibiotic use in meat production and disapproval of Sanderson's farming practices, but not that they had to divert resources away from such advocacy to address Sanderson's advertisements prior to this lawsuit.

Plaintiffs rely on Ninth Circuit precedent, namely *National Council of La Raza v. Cegavske*, 800 F.3d 1032 (9th Cir. 2015) and *Fair Housing Council of San Fernando Valley v. Roommate.com, LLC*, 666 F.3d 1216 (9th Cir. 2012), to argue an organization may establish standing where it diverted resources to fund activities they were already undertaking. In essence, Plaintiffs interpret Ninth Circuit law to suggest an organization need not change its behavior in response to a defendant's culpable conduct in order to satisfy standing under Article III. These cases, however, are readily distinguishable. In *La Raza*, the Ninth Circuit overturned a district court's conclusion that plaintiffs regularly engaged in voter registration drives, and so did not

---

resources to address Sanderson's advertisements, are wholly inconsistent with Plaintiffs' deposition testimony, and their apparent explanation for this discrepancy (namely, to clarify their prior deposition testimony) is untenable. Nothing in either the Keever or Spector Declarations legitimately elaborates upon, explains, or clarifies prior testimony elicited by opposing counsel on deposition. *Scamihorn*, 282 F.3d at 1085 n.7. Instead, they attempt to put an entirely different and inconsistent gloss on the same set of facts, attempting to showcase their prior testimony in a more favorable light. *See Halo Mgmt.*, 2004 WL 1781013, at *6 n.15.

change their behavior to deal with Nevada's failure to comply with federal law to offer voter registration through public assistance offices. *La Raza*, 800 F.3d at 1039-41. The Ninth Circuit emphasized that the key issue was not whether plaintiffs were engaging in activities they performed on a regular basis independent of the state's conduct, but that plaintiffs had alleged they were committing resources toward registering individuals *who would likely have been registered by the state*, had it complied with the law. *Id.* at 1040. Effectively, plaintiffs were expending additional resources to make-up for the void left by the state's noncompliance that would have been spent on some other aspect of their organizational purpose, *such as registering voters the statute-at-issue did not reach*. *Id.* That is not the case here, where Plaintiffs have failed to produce evidence demonstrating they expended additional resources to address Sanderson's advertisements, as opposed to its practices.

Similarly, in *Roommate.com*, the Ninth Circuit found standing where the plaintiff expended resources investigating defendant's alleged violations and subsequently began new education and outreach campaigns targeted at discriminatory roommate advertising *prior to commencing litigation*. *Roommate.com*, 666 F.3d at 1219. As discussed above, Plaintiffs have failed to produce evidence demonstrating that they expended any resources investigating Sanderson's advertisements or began new education and outreach campaigns targeted at Sanderson's ads prior to commencing this litigation. Instead, the evidence confirms Plaintiffs were simply going about their business as usual unaffected by Sanderson's advertisements.

**C. Plaintiffs' Actions Subsequent to Filing**

Sanderson argues Plaintiffs' post-filing activities are litigation-related and so cannot serve as a cognizable diversion of resources. Plaintiffs contend otherwise, asserting they are suffering an ongoing injury through their diversion of resources in an attempt to continue to combat public confusion surrounding Sanderson's ads. Plaintiffs' argument fails for multiple reasons. First, they rely on litigation press releases and graphics used in the public relations efforts announcing this lawsuit that cannot seriously be contended as other than litigation-related. Second, as discussed above, an organization cannot manufacture an injury by sustaining litigation costs. *La Asociacion*

*de Trabajadores*, 624 F.3d at 1088. Finally, even presuming Plaintiffs suffered an ongoing injury after litigation commenced, they have not established that they suffered an injury prior to the filing of the lawsuit. Standing must be present at the time suit is brought. *See Lujan*, 504 U.S. at 561. If jurisdiction is defective at the lawsuit's inception, it cannot be cured thereafter. *Trend Micro Incorp. v. RPost Holdings, Inc.*, No. 13-cv-05227-WHO, 2014 WL 1365491, at *7 (N.D. Cal. Apr. 7, 2014); *But see In re Schugg*, 688 F. App'x 477, 479-80 (9th Cir. 2017) (explaining exceptions to the rule, including where a party files a supplemental pleading under Federal Rule of Civil Procedure 15(d) or other exceptional circumstances, such as avoiding the needless filing of a new case). Thus, Plaintiffs cannot rely on evidence after the filing of their lawsuit to support their standing to sue.

### D. Evidentiary Concerns

In its Reply, Sanderson challenges the materials Plaintiffs' filed in support of their Opposition as improper and self-serving because: (1) Plaintiffs' declarations contradict the record; (2) Plaintiffs rely on documents and information they stipulated not to use to prove standing; (3) Plaintiffs rely on documents and information they did not identify or produce in discovery; and (4) Plaintiffs rely on documents initially withheld on a claim of First Amendment privilege. Since none of the evidence in the record establishes Plaintiffs' standing to sue, Sanderson's evidentiary concerns are moot.

### V. CONCLUSION

For the foregoing reasons, Plaintiffs lack organizational standing and their claims are dismissed for lack of subject matter jurisdiction. Since dismissal for lack of standing *must* be without prejudice, see *Fleck & Assocs., Inc. v. Phoenix*, 471 F.3d 1100, 1106-07 (9th Cir. 2006), Plaintiffs claims are dismissed without prejudice. Given that Plaintiffs have not sought leave to amend, and since amendment apparently would be futile, prejudice Sanderson, and produce an undue delay in this already prolonged litigation, their claims are dismissed without leave to amend. *See AmerisourceBergen Corp. v. Dialysist W., Inc.*, 465 F.3d 946, 951 (9th Cir. 2006).

**IT IS SO ORDERED**.

Dated: July 31, 2019

_____
RICHARD SEEBORG
United States District Judge